[No. G040676. Fourth Dist., Div. Three. Sept. 30, 2008.]

M.V., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ORANGE COUNTY SOCIAL SERVICES AGENCY et al., Real Parties in
Interest.

## COUNSEL

Deborah A. Kwast, Public Defender, Frank Ospino, Assistant Public Defender, Joseph Flohr and Paul DeQuattro, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Benjamin P. de Mayo, County Counsel, Karen L. Christensen and Julie J. Agin, Deputy County Counsel, for Real Party in Interest Orange County Social Services Agency.

Martha Franco for Real Party in Interest C.M.

Harold LaFlamme, Yana N. Kennedy and Karen S. Cianfrani for Minor.

## OPINION

**IKOLA, J.**—In October 2007, petitioner M.V. (mother) was incarcerated following allegations she engaged in consensual sexual intercourse with a 15-year-old boy.[1] That same day, the Orange County Social Services Agency (SSA) took mother's two-year-old son into protective custody because mother's incarceration prevented her from caring for her son. (See Welf. & Inst.

---

[1] Mother was arrested on charges of violating Penal Code section 288, subdivision (c)(1) ("[T]he victim is a child of 14 or 15 years, and [the perpetrator] is at least 10 years older than the child . . . ."), and Penal Code section 261.5, subdivision (d) ("Any person 21 years of age or older who engages in an act of unlawful sexual intercourse with a minor who is under 16 years of age . . . ."). A status review report prepared in this dependency action indicates she ultimately pleaded guilty to Penal Code section 261.5, subdivision (d), and Penal Code section 272, subdivision (a)(1) (contributing to the delinquency of a minor).

Code, § 300, subd. (g).)[2] In January 2008, mother pleaded no contest to the dependency petition, and the court declared her son a dependent and ordered reunification services for mother and her son pursuant to a case plan prepared by SSA. After spending approximately four months in county jail, mother was released to the Immigration and Naturalization Service (INS) on March 8, 2008. Sometime thereafter, the INS deported mother to Mexico. Mother notified SSA of her location in Mexico on May 5, and she initiated services with the Mexican authorities. However, at the time of the six-month review hearing on June 26, 2008, mother had failed to comply with much of her case plan due in large measure to her incarceration and subsequent deportation. At the six-month review hearing, following the recommendation of SSA, the court ordered reunification services terminated and set a hearing pursuant to section 366.26 (.26 hearing) to consider the termination of mother's parental rights.

Mother petitions for a writ of mandate directing the trial court to vacate its order of June 26, 2008, and to issue a new and different order continuing reunification services to a 12-month review. She claims the court erred in terminating reunification services and setting a .26 hearing by applying the 12-month review standard pursuant to section 366.21, subdivisions (f) and (g), instead of the six-month review standard pursuant to section 366.21, subdivision (e). We agree and therefore issue a writ of mandate directing the court to vacate its order and revisit the issues in conformity with this opinion.

## FACTS

We will not belabor the factual background of this proceeding, as we grant the writ petition on a purely legal issue, and need not reach the issue of substantial evidence also raised in the parties' briefs.

Of primary relevance here are the court's statement of the law and factual findings at the six-month review hearing. At the hearing, counsel for mother argued there was a basis for continuing reunification services for an additional six months: "Mother . . . at some point after disposition in this matter, was deported. Some reasonable period of time after she arrived back in her home town, she did get in touch with the Mexican social services agency. And according to faxes that were sent by the mother to the social worker, . . . she has been receiving services down there and participating in them. [¶] Her case plan was relatively simple that she was to engage in, substance abuse and parenting and counseling, to address specific issues. . . . [¶] It appears that mother has been trying to do her part in completing the service plan. It

---

[2] All further statutory references are to the Welfare & Institutions Code unless otherwise specified.

equally appears that . . . the social services agency in Mexico has not been cooperating with anybody here, in this country, to verify the extent to which mother is participating or addressing the service plan that was ordered by this court. It appears that she's not getting reasonable services. [¶] Now, I realize that that's not the control of the agency here, who has no control over what [the Mexican agency] does for her down there, but to the extent that there is going to be an argument mother is not making substantial progress and is unable to show a likelihood of return within six months, I've got to think that this is not due to mother's lack of efforts . . . . [¶] . . . [I]t seems like, given the dramatic changes and upheaval in her life, being deported back to her home state and the speed with which she got engaged in services and her efforts to document them . . . . It seems like mother is really making substantial progress and substantial effort at trying to regain custody of the child."

The court responded to counsel's argument by setting forth what it believed to be the relevant legal standard. "THE COURT: Counsel, the finding that the court has to make is that there is a substantial probability of return; is that true? [¶] [COUNSEL FOR MOTHER]: Yes. [¶] THE COURT: And the code defines what that means. [¶] Have you looked at those subsections?" "THE COURT: It says that 'The parent or guardian has consistently and regularly contacted and visited the child' is the first of the three criteria. The second one is that 'The parent or legal guardian has made significant progress in resolving the problems that led to the child's removal from the home,' and the last one is the (c) section, which indicates that 'the parent or legal guardian has demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well being and special needs.' [¶] What evidence do I have before me . . . to suggest that all three of those have been satisfied?"

After hearing additional argument from counsel for all parties, the court refused to extend reunification services and instead set a hearing to decide whether to terminate mother's parental rights. The court first explained it found the services provided by SSA to be reasonable: "Counsel's comments regarding services, certainly, [it is concerning] that the mother finds herself in a position where it's difficult for her to receive services; however, . . . the mother has failed to maintain regular contact with the social worker here . . . and to that extent, there seems to be some difficulty with the mother, actually, engaging in services, even if adequate services are available to her." The court continued: "The court does note that based on what I have before me, that the court cannot make a finding that there is a substantial probability of return within the next six months, and as a result, will order that reunification services be terminated at this time. [¶] The matter is set for a contested 366.26 hearing."

The minute order generated from the hearing states: "Court finds pursuant to sec. 366.21(e) W&I Code that return of child to parents would create a substantial risk of detriment to the physical or emotional well being of the child based on parents' failure to regularly participate in and complete the service plan. [¶] Court finds reasonable services have been provided or offered to the parent(s)/guardian. [¶] The court cannot find that there is a substantial probability of return within six months. [¶] Court finds pursuant to sec. 366.21(e) that the child was under the age of three on the date of initial removal and the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan. A hearing pursuant to sec. 366.26 is in the best interests of the child based on the reports and recommendations provided by the social services agency. [¶] Court orders reunification services to parent(s) terminated. [¶] Court orders pursuant to sec. 366.21(e) that a hearing be held within 120 days pursuant to sec. 366.26."

## DISCUSSION

Mother timely filed a petition for writ of mandate (Cal. Rules of Court, rule 8.452), claiming the court applied the wrong legal standard at the six-month review and challenging the court's factual findings for lack of substantial evidence.

*Legal Standards Utilized at Six-month Reviews and 12-month Reviews*

Before explaining mother's argument in detail, it is necessary to provide a brief summary of relevant dependency law. "[F]amily preservation is the first priority when dependency proceedings are commenced." (*In re Lauren Z.* (2008) 158 Cal.App.4th 1102, 1112 [70 Cal.Rptr.3d 583].) To that end, "[w]hen a child is removed from a parent's custody, the juvenile court ordinarily must order child welfare services for the minor and the parent for the purpose of facilitating reunification of the family." (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 843 [69 Cal.Rptr.3d 96, 172 P.3d 402] (*Tonya M.*); see § 361.5, subd. (a).)

In cases like the instant one, where the child is less than three years old and reunification services have been ordered, "the court shall inform the parent or guardian that the failure of the parent or guardian to participate regularly in any court-ordered treatment programs or to cooperate or avail himself or herself of services provided as part of the child welfare services case plan *may result* in a termination of efforts to reunify the family after six months." (§ 361.5, subd. (a)(3), italics added.) Whereas services are presumptively provided for 12 months to children over the age of three and their parents (§ 361.5, subd. (a)(1)), the presumptive rule for children under the age of three on the date of initial removal is that "court-ordered services shall

not exceed a period of six months from the date the child entered foster care" (§ 361.5, subd. (a)(2); see *In re Christina A.* (2001) 91 Cal.App.4th 1153, 1160–1161 [111 Cal.Rptr.2d 310]). The " 'unique developmental needs of infants and toddlers' " (*Daria D. v. Superior Court* (1998) 61 Cal.App.4th 606, 612 [71 Cal.Rptr.2d 668]) justifies a greater emphasis on establishing permanency and stability earlier in the dependency process " 'in cases with a poor prognosis for family reunification' " (*id.* at p. 611).

■ "The status of every dependent child in foster care shall be reviewed periodically as determined by the court but no less frequently than once every six months . . . ." (§ 366, subd. (a)(1).) Pursuant to section 366.21, subdivision (e), the court is required at the initial six-month review to return any dependent child to "the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child . . . would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. . . . The failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental." Mother does not challenge the court's finding that her son should not be returned to her custody at the time of the six-month review. It is uncontested mother failed to participate regularly and make substantive progress in court-ordered treatment programs during the first six months of her service plan.

■ Instead, mother asserts her reunification services should have continued until the 12-month permanency hearing and the court should not have set a .26 hearing to terminate her parental rights. The third paragraph of section 366.21, subdivision (e), requires a specialized inquiry at the six-month review for children like mother's son, who are "under the age of three years on the date of the initial removal" and are not being returned to the custody of their parents at that time. For such dependent children, if "the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the *court may schedule a hearing pursuant to Section 366.26* within 120 days. If, however, the court finds there is a *substantial probability that the child . . . may be returned* to his or her parent or legal guardian within six months or that reasonable services have not been provided, the court shall continue the case to the 12-month permanency hearing." (§ 366.21, subd. (e), italics added.)

Thus, there are two distinct determinations to be made by trial courts applying the third paragraph of section 366.21, subdivision (e). First, the statute identifies specific factual findings—failure to participate regularly and make substantive progress in the court-ordered treatment plan—that, if found by clear and convincing evidence, would *justify* the court in scheduling a .26

hearing to terminate parental rights. But this inquiry does not *require* the court to schedule a .26 hearing ("the court *may* schedule a hearing"). (§ 366.21, subd. (e), italics added; see *In re Jesse W.* (2007) 157 Cal.App.4th 49, 62 [68 Cal.Rptr.3d 435] ["The statute makes clear that the *court has discretion to set* a section 366.26 hearing at the six-month review hearing under specified circumstances . . . ." (italics added)].) Instead, it authorizes the court to set such a hearing if the required findings have been made. Mother does not contest the court's finding, by clear and convincing evidence, that she "failed to participate regularly and make substantive progress in a court-ordered treatment plan."

The second determination called for by the third paragraph of section 366.21, subdivision (e), protects parents and guardians against premature .26 hearings. Notwithstanding any findings made pursuant to the first determination, the court shall not set a .26 hearing if it finds either (1) "there is a substantial probability that the child . . . may be returned to his or her parent . . . within six months . . ."; or (2) "reasonable services have not been provided . . ." to the parent. (§ 366.21, subd. (e).) In other words, the court must continue the case to the 12-month review if it makes either of these findings. However, the court is not required to set a .26 hearing even if it finds against the parent on both of these findings. The parent is also entitled to continued reunification services (with any necessary modifications) if the court makes either of these findings in favor of the parent. (*Tonya M., supra*, 42 Cal.4th at p. 845; Cal. Rules of Court, rule 5.710(f)(11).)[3] Mother challenges only the court's finding pertaining to "substantial probability" on appeal, so we will focus on this portion of the inquiry.

 Section 366.21, subdivision (e), which relates solely to the conduct of the six-month review hearing, does not provide further guidance concerning how to determine at the six-month review whether there is a "substantial probability" the child "may be returned" to a parent within the following six months. (§ 366.21, subd. (e).) California Rules of Court, rule 5.710(f), restates subdivision (e) and in addition provides a three-factor test for assessing the probability of return at the six-month review: "If the court does not return custody of the child: [¶] (1) The court may set a hearing under section 366.26 within 120 days if: [¶] . . . [¶] (E) The child was under the age of three when initially removed and the court finds by clear and convincing

---

[3] California Rules of Court, rule 5.710(f)(11) provides in relevant part: "If the child is not returned and the court does not set a section 366.26 hearing, then the court must order that any reunification services previously ordered will continue to be offered to the parent or guardian, and the court may modify those services as appropriate." *In re Jesse W., supra*, 157 Cal.App.4th at pages 62–64, disapproved of this rule to the extent it requires the continuation of services for parents who have not met either the "substantial probability" or "lack of reasonable services" finding, in the context of a case where services were continued for the other parent (thus, a .26 hearing could not be set at the six-month review).

evidence that the parent has failed to participate regularly and make substantive progress in any court-ordered treatment plan, unless the court finds a substantial probability that the child may be returned within 6 months or within 12 months of the date the child entered foster care, whichever is sooner, or that reasonable services have not been offered or provided. [¶] *In order to find a substantial probability of return within the applicable time period, the court must find all of the following*: [¶] (i) The parent or guardian has consistently and regularly contacted and visited the child; [¶] (ii) The parent or guardian has made significant progress in resolving the problems that led to the removal of the child; and [¶] (iii) The parent or guardian has demonstrated the capacity and ability to complete the objectives of the treatment plan and to provide for the child's safety, protection, physical and emotional health, and special needs." (Cal. Rules of Court, rule 5.710(f), italics added.)

Presumably, the three-factor test for substantial probability of return presented in California Rules of Court, rule 5.710(f)(1)(E) was taken from a substantively identical test in section 366.21, subdivision (g). Subdivision (g) provides, in relevant part: "If the time period in which the court-ordered services were provided has met or exceeded the time period set forth in [section 361.5, subdivision (a)] and a *child is not returned to the custody of a parent or legal guardian at the permanency hearing held pursuant to subdivision (f)*, the court shall do one of the following: [¶] (1) Continue the case for up to six months for a permanency review hearing, provided that the hearing shall occur within 18 months of the date the child was originally taken from the physical custody of his or her parent or legal guardian. *The court shall continue the case only if it finds that there is a substantial probability that the child will be returned* to the physical custody of his or her parent or legal guardian . . . . *For the purposes of this section, in order to find a substantial probability that the child will be returned* to the physical custody of his or her parent or legal guardian and safely maintained in the home within the extended period of time, *the court shall be required to find all of the following*: [¶] (A) That the parent or legal guardian has consistently and regularly contacted and visited with the child. [¶] (B) That the parent or legal guardian has made significant progress in resolving problems that led to the child's removal from the home. [¶] (C) The parent or legal guardian has demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs." (§ 366.21, subd. (g), italics added.)

Thus section 366.21, subdivision (g), purports to apply only after the child has not been returned to the parent at a hearing conducted pursuant to section

366.21, subdivision (f) (12-month permanency hearings), and does not mention section 366.21, subdivision (e) hearings (six-month reviews).[4] Pursuant to subdivision (g), the court can only continue the case to the 18-month review if it finds a substantial probability the child will be returned to the parent; moreover, the court must find all three of the listed factors to justify a finding of a substantial probability the child will be returned to his or her parent. (§ 366.21, subd. (g)(1).)

*Applicability of 12-month Review Standard to Six-month Reviews*

The trial court believed the test of substantial probability of return provided in section 366.21, subdivision (g)(1), to be applicable to six-month review determinations of "substantial probability." The court noted "the code defines" the meaning of "substantial probability." The court then proceeded to read from section 366.21, subdivision (g)(1), in guiding mother's counsel toward the concession there was insufficient evidence to satisfy all three findings required by this standard of "substantial probability." The court concluded it could not "make a finding that there is a substantial probability of return within the next six months, and as a result, will order that reunification services be terminated at this time." The court also set a .26 hearing.

■ Based on the language of the statute, mother contends the court erred in applying section 366.21, subdivision (g), at the six-month review. She also points to the *Tonya M.* case in support of this proposition. In *Tonya M.*, the parent filed a writ petition challenging the court's termination of reunification services and decision to set a .26 hearing, based in part on a finding at the six-month hearing that there was no substantial probability of return within six months. (*Tonya M., supra,* 42 Cal.4th at pp. 842–843.)[5] Our Supreme

---

[4] Similarly, the sixth paragraph in section 361.5, subdivision (a), describes the standard for continuing reunification services at the 12-month permanency hearing: "Notwithstanding paragraphs (1), (2), and (3), court-ordered services may be extended up to a maximum time period not to exceed 18 months after the date the child was originally removed from physical custody of his or her parent or guardian if it can be shown, *at the hearing held pursuant to subdivision (f) of Section 366.21,* that the permanent plan for the child is that he or she will be returned and safely maintained in the home within the extended time period. The *court shall extend the time period only if it finds that there is a substantial probability that the child will be returned to the physical custody of his or her parent or guardian* within the extended time period or that reasonable services have not been provided to the parent or guardian. If the court extends the time period, the court shall specify the factual basis for its conclusion that there is a substantial probability that the child will be returned to the physical custody of his or her parent or guardian within the extended time period." (§ 361.5, subd. (a), italics added.)

[5] The issue presented in *Tonya M.* was whether the trial court should have measured substantial probability of return over the next six calendar months, rather than the period of time remaining until the 12-month review (which was only four months after the six-month review in that case, due to delay caused by the parents). (*Tonya M., supra,* 42 Cal.4th at

Court found the statute to be ambiguous, and embarked upon an investigation into "the provision's statutory context, its legislative history, and 'the human problems the Legislature sought to address' in adopting the juvenile dependency scheme." (42 Cal.4th at p. 844.) In conducting this review, the *Tonya M.* court observed, "The dependency scheme sets up three distinct periods and three corresponding distinct escalating standards for the provision of reunification services to parents of children under the age of three." (*Id.* at p. 845.) In describing the "escalating standards," it attributed the test of "substantial probability" set forth in section 366.21, subdivision (g)(1), only to the 12-month review. (*Tonya M., supra,* 42 Cal.4th at p. 845.) "The effect of these shifting standards is to make services during these three periods first presumed, then possible, then disfavored." (*Ibid.*) Put simply, mother claims she should have been judged by a more lenient standard than the section 366.21, subdivision (g)(1), standard applied by the court.

SSA makes two counterarguments: (1) the Legislature did intend to apply the same test to both "substantial probability" analyses, as evidenced by language in section 366.21, subdivision (g)(1), indicating its test of "substantial probability" applied "[f]or the purposes of this section" (rather than referencing only subds. (f) & (g)); and (2) any error in applying subdivision (g)(1) is harmless because the California Rules of Court prescribe an identical test.

We reject the proposition that determination of the "substantial probability" question presented by section 366.21, subdivision (e) requires the court to make the findings set forth in section 366.21, subdivision (g)(1). Conceptually, the six-month review and the 12-month review present distinct inquiries. At the six-month review, the court has discretion to continue the case and forebear from scheduling a .26 hearing even if it does not make the finding there is a substantial probability the child may be returned to his or her parent. Section 366.21, subdivision (e), places discretion in the hands of the trial court as to whether to schedule a hearing to terminate parental rights: if the court "finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan," it "*may* schedule a hearing pursuant to Section 366.26 within 120 days." (§ 366.21, subd. (e), italics added; Cal. Rules of Court, rule 5.710(f)(1) ["The court *may* set a hearing under section 366.26 . . . ." (italics added)].)[6] Of course, the court's discretion becomes limited when there is a substantial

---

pp. 840–843.) The court ultimately held the inquiry should apply to the period of time between the six-month hearing and the 12-month hearing, regardless of the actual number of months between the six-month review and the 12th month after the child entered foster care. (*Id.* at p. 840.)

[6] This contrasts with the court's lack of discretion at the 12-month hearing. If the child is not returned to his or her parent's custody at the 12-month hearing, the court must (1) continue the case for six more months, but only if the court finds all three substantial probability factors

probability the child may be returned to the parent, in which case the court *must* continue the case to the 12-month hearing.

Furthermore, subdivisions (e) and (g)(1) of section 366.21 present distinct legal standards: subdivision (e) asks whether there is a substantial probability the child *may* be reunited with the parent by the 12-month review; subdivision (g)(1) asks whether there is a substantial probability the child *will* be reunited with the parent by the 18-month review. (See *Tonya M., supra*, 42 Cal.4th at pp. 844–848.) As observed by our Supreme Court, there is a different "operable standard" in play at each of the hearings. (*Id.* at p. 848.) Simply applying subdivision (g)(1) at a six-month review as if the court were making findings on "substantial probability" at a 12-month review is legal error. We do not think the Legislature intended to countermand these different operable standards by using the word "section" in its preface to the subdivision (g)(1) test, rather than specifically referencing subdivisions (f) and (g). Moreover, the statute expressly conditions all of the court's options under subdivision (g), including the subdivision (g)(1) test, on a finding first being made *at the 12-month permanency hearing* that the child will not be returned to the parent or legal guardian. (§ 366.21, subd. (g) ["If . . . a child is not returned to the custody of a parent or legal guardian at the permanency hearing held pursuant to subdivision (f), the court shall do one of the following"].)

The more difficult question, however, is precisely what the "operable standard" of "substantial probability" at a six-month review should be. *Tonya M.* did not provide an answer to this question (beyond simply quoting the language of the statute). (*Tonya M., supra*, 42 Cal.4th at p. 848.) California Rules of Court, rule 5.710(f)(1)(E), suggests the substantive factors considered in the "substantial probability" component of the inquiry remain unchanged—sensibly, the three factors by which a parent should be judged to be on the road to reunification (maintaining consistent and regular contact with the child, making progress in addressing the issues that led to dependency, and demonstrating the potential to be a good parent) are the same at both the six-month review and the 12-month review. A court certainly does not err by considering at the six-month review evidence pertaining to the factors identified in section 366.21, subdivision (g)(1), and California Rules of Court, rule 5.710(f)(1)(E).

■ However, for the purposes of this case, we see two crucial differences between the "substantial probability" inquiry required at the six-month review

---

in section 366.21, subdivision (g)(1); (2) order a .26 hearing, upon a showing reasonable services were provided; or (3) order the child remain in long-term foster care, but only upon specific factual findings by clear and convincing evidence. (§ 366.21, subd. (g).) The court is not given discretion at the 12-month hearing to simply punt to the 18-month review. Unless the facts support continuing the case six months or ordering long-term foster care, the case must be set for a .26 hearing.

and the inquiry required at the 12-month review.[7] First, the court is not charged by section 366.21, subdivision (e), with finding a substantial probability the child *will* be returned. The court is charged with finding a substantial probability the child *may* be returned. Literally, the statute commands the court to determine whether there is a strong likelihood of a *possibility* of return (not simply a strong likelihood the return will in fact occur). The word "may" alters the typically high burden of "substantial probability." Admittedly, the statute is unwieldy. ▮ But we must honor the law as written by the Legislature. (*Campbell v. Zolin* (1995) 33 Cal.App.4th 489, 497 [39 Cal.Rptr.2d 348] ["Ordinarily, where the Legislature uses a different word or phrase in one part of a statute than it does in other sections or in a similar statute concerning a related subject, it must be presumed that the Legislature intended a different meaning."].)

Second, the court may take all of the evidence into consideration in making its findings. The court is not limited to inquiring into the three factors set forth in section 366.21, subdivision (g)(1), and California Rules of Court, rule 5.710(f)(1)(E). The court should weigh evidence pertaining to the factors identified in California Rules of Court, rule 5.710(f)(1)(E), along with any other relevant evidence (such as extenuating circumstances excusing noncompliance with the three factors) in considering whether there is substantial evidence of a possible return to the mother by the 12-month hearing. It is inconsistent with the language and structure of the statute to impose the same three mandatory factual findings set forth in section 366.21, subdivision (g)(1) to support a finding that the child may be returned to his or her parent pursuant to section 366.21, subdivision (e).[8]

---

[7] There is no "uniform interpretation" of the phrase " 'substantial probability' "—the "phrase is included in at least 30 provisions" of various California codes and has a variety of meanings depending on the particular statute at issue. (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715–716 [34 Cal.Rptr.2d 898, 882 P.2d 894].) The "plain meaning" of the term " 'substantial probability' " suggests it is comparable to " 'very likely' " or " 'a strong likelihood.' " (*Jabro v. Superior Court* (2002) 95 Cal.App.4th 754, 758 [115 Cal.Rptr.2d 843].)

[8] To the extent California Rules of Court, rule 5.710(f)(1)(E), purports to require the court to do so, we disapprove of rule 5.710(f)(1)(E). (See *In re Jesse W., supra,* 157 Cal.App.4th at pp. 63–64.) We do not think *Sara M. v. Superior Court* (2005) 36 Cal.4th 998 [32 Cal.Rptr.3d 89, 116 P.3d 550] (*Sara M.*) requires us to hold otherwise. In *Sara M.*, the California Supreme Court upheld the validity of the predecessor to rule 5.710(f)(1)(B), which authorizes courts to set a .26 hearing at the six-month review if it "finds by clear and convincing evidence that the parent has not had contact with the child for six months." (Cal. Rules of Court, former rule 1460(f)(1)(B); see *Sara M., supra,* 36 Cal.4th at pp. 1008–1017.) This rule is based on the text of section 366.21, subdivision (e): "If the child was removed initially under subdivision (g) of Section 300 and the court finds by clear and convincing evidence that the whereabouts of the parent are still unknown, or the parent has failed to contact and visit the child, the court may schedule a hearing pursuant to Section 366.26 within 120 days." (§ 366.21, subd. (e); see *Sara M., supra,* 36 Cal.4th at p. 1009.) As noted by the *Sara M.* court, rules of court "are

 If, at the six-month review, the court finds there is a substantial probability the child may be returned to the parent, the court lacks discretion to schedule a .26 hearing. The court must instead continue reunification services until the 12-month review, and make any necessary modifications to the service plan in the interests of facilitating reunification. (Cal. Rules of Court, rule 5.710(f)(11); see *In re Jesse W., supra*, 157 Cal.App.4th at pp. 61–63.)[9]

 The analytical framework we describe is consistent with the purpose of the statutory scheme: to provide more timely resolutions for very young children in cases " 'with a poor prognosis for family reunification, (e.g., chronic substance abuse, multiple previous removals, abandonment, and chronic history of mental illness),' " without vitiating the strong interest in reunifying families or prematurely cutting off the rights of parents who are making substantial efforts to reunify. (*Daria D. v. Superior Court, supra*, 61 Cal.App.4th at p. 611; see *Tonya M., supra*, 42 Cal.4th at p. 846; *In re Christina A., supra*, 91 Cal.App.4th at pp. 1162–1163.) Simply applying the 12-month review standard to six-month reviews ignores the balance of interests inherent in the statutory scheme. "[S]ervices may be terminated at

---

entitled to a measure of judicial deference," but are "not binding on the courts and invalid if contrary to statute." (*Sara M., supra*, 36 Cal.4th at p. 1014.)

[9] The parties have not presented us with the issue of whether the court has discretion to continue reunification services at the six-month review in the absence of a finding either that it is "substantially probable" the child may be returned to the parent, or that reasonable services have not been provided to the parent. As noted above, the statute clearly provides the court with discretion to continue the case to the 12-month review rather than setting a .26 hearing, regardless of whether the court makes "substantial probability" or "lack of reasonable services" findings in favor of the parent. The California Supreme Court's summary of the law in *Tonya M.*, however, suggests reunification services may only be extended at a six-month review if a "substantial probability" or "lack of reasonable services" finding is made: "During the second period, which runs from the six-month review hearing to the 12-month review hearing [citation], a heightened showing is required to continue services. So long as reasonable services have in fact been provided, the juvenile court must find 'a substantial probability' that the child may be safely returned to the parent within six months in order to continue services. (§ 366.21, subd. (e).)" (*Tonya M., supra*, 42 Cal.4th at p. 845.) The majority opinion in *In re Jesse W.* is in accord with this statement of the law. (*In re Jesse W., supra*, 157 Cal.App.4th at p. 63.) On the other hand, Justice McDonald's dissenting opinion in *In re Jesse W.* explains why, in his view, courts are required to continue reunification services at the six-month review unless the court sets a .26 hearing, regardless of the court's treatment of the "substantial probability" issue. (*In re Jesse W.*, at pp. 67–70 (dis. opn. of McDonald, J.).) According to Justice McDonald, the third paragraph of section 366.21, subdivision (e), which includes the "substantial probability" language, "address[es] when the court has discretion to set a section 366.26 hearing, and do[es] not address reunification services." (*In re Jesse W., supra*, 157 Cal.App.4th at pp. 67–70 (dis. opn. of McDonald, J.).) Justice McDonald suggests the remainder of section 366.21, subdivision (e), as well as the Judicial Council's interpretation of that subdivision in California Rules of Court, rule 5.710(f)(11), require reunification services to continue whenever the court opts not to set a .26 hearing. (*In re Jesse W., supra*, 157 Cal.App.4th at pp. 67–68 (dis. opn. of McDonald, J.).)

the six-month stage only when 'parental unfitness is so well established that there is no longer "reason to believe that [a] positive, nurturing parent-child relationship[] exist[s]" [citation], and the *parens patriae* interest of the state favoring preservation rather than severance of natural familial bonds has been extinguished.' " (*Daria D. v. Superior Court, supra*, 61 Cal.App.4th at p. 613.)

*Application to the Trial Court's Ruling*

The court erred by ending its inquiry into substantial probability of return with the determination there was insufficient evidence to support a finding that "all three" of the factors set forth in section 366.21, subdivision (g)(1) "have been satisfied." The court was not required to find the existence of all three factors to continue reunification services to a 12-month review. The court was entitled to consider any other evidence, including mother's extenuating circumstances, in mitigation of mother's relative lack of evidence of satisfying all three factors (in particular, her inability to visit her son and follow her prescribed case plan in light of her incarceration, detainment by the INS, and deportation). The court's ruling indicates it exercised discretion to set a hearing terminating parental rights. The minute order states: "A hearing pursuant to sec. 366.26 is in the best interests of the child based on the reports and recommendations provided by the social services agency." However, had the court found a substantial probability of return pursuant to section 366.21, subdivision (e), the court would not have had discretion to set such a hearing or terminate reunification services. And the court believed it lacked the discretion to find a probability of return unless the three factors in section 366.21, subdivision (g)(1) were satisfied. The court's belief was mistaken.

The error was not harmless. Mother is no longer incarcerated (indeed, she was free in Mexico more than a month prior to the six-month review). There is no evidence in the record indicating she is addicted to illegal drugs. She has made significant efforts to demonstrate her desire to continue parenting her son. It is reasonably probable mother could have obtained a more favorable result had the court applied the correct legal standard at the six-month review. (See *In re Justin L.* (1987) 188 Cal.App.3d 1068, 1077–1078 [233 Cal.Rptr. 632] [harmless error standard applies to dependency proceedings].) We grant mother's petition for writ of mandate.

*Substantial Evidence*

The remaining issue raised by the parties is whether there is substantial evidence supporting the court's order. We need not reach this issue, as we grant the writ of mandate requested by mother based on legal error.

## DISPOSITION

Let a peremptory writ of mandate issue directing the court to vacate its order of June 26, 2008, and to conduct a new hearing pursuant to section 366.21, subdivision (e), in conformity with this opinion. In the interests of justice, this decision is final 10 days after its filing. (Cal. Rules of Court, rule 8.264(b)(3).)

Moore, Acting P. J., and Aronson, J., concurred.