Filed 2/20/14  Y.L. v. Super. Ct. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| Y.L.,<br><br>          Petitioner,<br><br>               v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>          Respondent;<br><br>KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>          Real Party in Interest. | F068440<br><br>(Super. Ct. Nos. JD123493-01, JD123494-01, JD126381-01, JD130228-00)<br><br>**OPINION** |

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Louie L. Vega, Judge.

Y.L., in pro. per., for Petitioner.

No appearance for Respondent.

Theresa A. Goldner, County Counsel, Paul E. Blackhurst, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]      Before Gomes, Acting P.J., Poochigian, J, and Peña, J.

Y.L. (mother) in propria persona seeks extraordinary writ relief from the juvenile court's orders issued at a six-month review hearing (Welf. & Inst. Code, § 366.21, subd. (e))[1] in November 2013, terminating her reunification services and setting a section 366.26 hearing as to her four daughters, Mo., Me., Melanie and Ma., who range in age from one to five years. Mother contends the juvenile court erred in finding she failed to regularly participate and make substantive progress in her family reunification services and in finding there was not a substantial probability the children could be returned to her custody. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

Mother has a long history of methamphetamine use, which began when she was 15 years old. At the six-month review hearing in November 2013, she was 22 years old, had four children, and was pregnant with a fifth child.

In September 2009, the Kern County Department of Human Services (department) received a report that then newborn Me. tested positive for amphetamine. Mo. was then one and one-half years old.

The department did not detain Mo. and Me. but instead offered mother voluntary family maintenance services including drug treatment. However, she could not abstain and in March 2010, was terminated from a drug treatment program. That same month, the department took Mo. and Me. into protective custody and the juvenile court ordered them detained.

In April 2010, the juvenile court ordered mother and the children's father to participate in family reunification services. Mother's services plan required her to participate in child neglect, parenting, domestic violence and substance abuse counseling, and submit to random drug testing.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

In April 2010, mother entered a 45-day residential drug treatment program, which she successfully completed. She subsequently enrolled in outpatient drug treatment but was discharged for nonattendance. She was also dropped from her parenting class for nonattendance and tested positive for methamphetamine in August 2010. She consistently visited Mo. and Me., however, and their visits were of good quality.

In October 2010, the juvenile court found mother and the children's father made minimal progress in their services plans, terminated their reunification services, and set a section 366.26 hearing for February 2011.

In February 2011, prior to the section 366.26 hearing, mother filed a section 388 petition asking the juvenile court to return Mo. and Me. to her custody under family maintenance services or reinstate family reunification services. Mother stated in her petition that she entered a residential drug treatment program in November 2010, subsequently maintained her sobriety and participated in all the counseling required under her prior services plan. In addition, she maintained her bond with the children through visitation and expected to complete her counseling requirements in two months. The juvenile court denied her request for a hearing on the section 388 petition.

In February 2011, the juvenile court conducted a section 366.26 hearing on the department's recommendation to terminate mother's parental rights. After an evidentiary hearing, the court found clear and convincing evidence that terminating mother's parental rights would be detrimental to Mo. and Me. and approved their placement in a planned permanent living arrangement.

In May 2011, mother gave birth to Melanie. The department filed a dependency petition on Melanie's behalf based on mother's history of methamphetamine use and failure to reunify with Mo. and Me. The juvenile court allowed Melanie to remain in mother's custody under family maintenance because of mother's progress in her services. She completed classes in parenting, neglect and domestic violence. She also continued to participate in substance abuse counseling and random drug testing. She was reportedly

3

very compliant and provided negative drug tests.  She admitted, however, to a public health nurse that she smoked cigarettes, drank alcohol and used methamphetamine during her pregnancy with Melanie.  Mother's family maintenance plan required her to continue in substance abuse counseling and randomly drug test.

In August 2011, mother filed a section 388 petition asking the juvenile court to place Mo. and Me. with her under family maintenance in light of her progress and strong relationship with the children.  The department supported mother's request and the court granted her petition.

By March 2012, the juvenile court had terminated its jurisdiction over Mo., Me. and Melanie.

In February 2013, mother gave birth to Ma.  Mother and Ma. tested positive for amphetamine.  Ma. was detained at the hospital and the department filed dependency petitions as to all four girls alleging mother's methamphetamine use placed the children at risk of harm.

Mother told a social worker she relapsed because she associated with the wrong people and had a craving to use.  In March 2013, she was dropped from her substance abuse counseling for nonattendance.  In early April, she had an appointment to enter drug treatment but overslept and was denied entry.  Ten days later, she showed up "high" for a visit with the children.  In late April 2013, she entered drug treatment but left the same day.

In May 2013, the juvenile court conducted a dispositional hearing as to all four children and ordered mother to participate in counseling for child neglect, parenting and substance abuse, and submit to random drug testing.[2]

In early May 2013, mother entered a drug treatment program but left two days later.  She was scheduled to enter another drug treatment facility approximately three

---

[2]     The juvenile court did not order reunification services for Mo., Me. and Melanie's father or for Ma.'s alleged father.

weeks later but did not attend her appointment. During this time, she was testing positive for methamphetamine.

In early July 2013, mother entered an inpatient drug treatment program, which she was expected to complete in early May 2014. She attended all her classes, tested negative for drugs, and reportedly displayed a responsible and positive attitude toward treatment. She was expecting her fifth child in March 2014.

In its report for the six-month review hearing, the department recommended the juvenile court terminate mother's reunification services and set a section 366.26 hearing to consider a permanent plan of adoption. The department reported that mother complied with her services plan by completing parenting and child neglect counseling and was meeting her objectives of completing substance abuse counseling and abstaining from drug use. However, the department considered her overall progress minimal and insufficient to warrant continuing reunification efforts. In addition, the children were placed together with a caregiver who wanted to adopt them.

In late October 2013, while on a six-hour weekend pass from the treatment facility, mother relapsed. She contacted her social worker to inform her of the incident. Beverly Rhodes, mother's substance abuse counselor, told the social worker she was still willing to work with mother because she admitted her relapse.

Ms. Rhodes testified for mother at the six-month review hearing in November 2013. She said mother was in a perinatal program where she could remain until May 1, two months after she delivered her baby. The goal was to give mother time to bond with her baby, attend groups and self-help support meetings, obtain a sponsor and work with a counselor. She said mother made "tremendous progress" in drug treatment and accepted responsibility for her actions. She characterized mother's participation as "excellent." She also said it was not unusual for a person to relapse when outside the safe confines of the treatment facility and mother responded appropriately by returning to treatment and admitting she relapsed.

5

Ms. Rhodes further testified that mother was on track to complete the program on schedule but the children could not live with her at the facility. Ms. Rhodes would coordinate with another agency to transition mother into outpatient treatment and a sober living environment after she completed the program.

Mother's attorney, as well as the minors' attorneys, argued the juvenile court should continue reunification services to the 12-month review hearing given mother's substantial progress in treating her drug addiction.

The juvenile court, however, followed the department's recommendation and terminated mother's reunification services. The court reasoned that mother's latest relapse was not isolated, but just one in a series of relapses over several years. Further, the court did not find any evidence there was a substantial probability the children could be returned to mother after an additional period of reunification services.

The juvenile court set a section 366.26 hearing as to all four children. This petition ensued.

**DISCUSSION**

Mother contends there was insufficient evidence to support the juvenile court's finding she failed to regularly participate and make substantive progress in her services plan. Alternatively, she contends the juvenile court erred in finding there was not a substantial probability the children could be returned to her custody if reunification services were continued. We disagree.

"[F]amily preservation is the first priority when dependency proceedings are commenced. [Citation.]" (*In re Lauren Z.* (2008) 158 Cal.App.4th 1102, 1112.) For that reason, the juvenile court is required to provide family reunification services when it removes a child from parental custody. (§ 361.5, subd. (a); but see *id*., subd. (b).) However, the duration of family reunification services is not limitless. Further, expeditious resolution of the dependent child's status is also a priority, especially where

6

infants and toddlers are involved. (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 175 (*M.V.*).)

Section 366.21, subdivision (e) governs the juvenile court's decision whether to continue reunification services at the six-month review hearing. Subdivision (e) requires a special inquiry for children such as mother's who are not being returned to parental custody and comprise a sibling group; i.e., two or more siblings removed from parental custody at the same time, at least one of which was under the age of three on the date of the initial removal. (§ 361.5, subd. (a)(1)(C).) For such dependent children, the juvenile court may set a section 366.26 hearing if it "finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan …." (§ 366.21, subd. (e), 3d par.) The juvenile court must continue reunification services to the 12-month review hearing, however, if it finds a substantial probability the children may be returned to parental custody by that time. (*Ibid.*)[3]

Reunification services for a sibling group are limited to 12 months from the date the children entered foster care. (§ 361.5, subd. (a)(1)(C).) A child is considered to have entered foster care on the earlier of the date of the jurisdictional hearing or the date that is 60 days after the date on which the child was initially removed from parental custody. (§ 361.49.) In this case, the children entered foster care on April 8, 2013, 60 days from the date they were initially removed.

Mother argues the juvenile court erroneously focused on her history of drug use in assessing her participation and progress to the virtual exclusion of compelling favorable evidence she offered at the hearing. Specifically, she points to Beverly Rhodes' testimony that her participation subsequent to July 2013 was "excellent" and her progress

---

[3]     The juvenile court must also continue reunification services under section 366.21, subdivision (e), paragraph three if it finds the parent was not provided reasonable services. Mother does not challenge the juvenile court's reasonable services finding.

"tremendous" despite her relapse in October. We disagree the juvenile court's focus was displaced.

"The juvenile court has a special responsibility to the child as *parens patriae* and must look to the totality of a child's circumstances when making decisions regarding the child." (*In re Chantal S*. (1996) 13 Cal.4th 196, 201.) Further, the juvenile court may consider all relevant evidence in making its findings. (*M.V.*, *supra*, 167 Cal.App.4th at p. 181.) It alone determines where the weight of the evidence lies. (*In re Casey D*. (1999) 70 Cal.App.4th 38, 52-53.)

In this case, substantial evidence supports the juvenile court's finding mother failed to regularly participate and make substantive progress in drug treatment. She resisted drug treatment and continued to use methamphetamine until she entered treatment in July 2013. During her first weekend pass in October, she relapsed. At that point, she was approximately five months into a six-month reunification period and three months into treatment. Considering the many times mother relapsed over the years, the juvenile court could reasonably conclude she was no closer to recovery.

Further, the juvenile court could conclude on this evidence that there was not a substantial probability the children could be returned to mother's custody by the 12-month review hearing in April 2014. Even assuming mother continued inpatient treatment, she would not have completed it by April and the children could not be placed with her at the treatment facility. Additionally, once mother left the facility, she faced the challenge of maintaining sobriety without the structure and safety of an inpatient setting while meeting the demands of a newborn. Given mother's history of relapse and her circumstances, there was not a substantial probability the children could be returned to her custody by April or even within a reasonably foreseeable time thereafter.

We find no error in the juvenile court's findings and orders.

## DISPOSITION

The petition for extraordinary writ is denied.  This opinion is final forthwith as to this court.