Filed 7/11/24  In re M.G. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re M.G. et al., Persons Coming Under the Juvenile Court Law. | B332200 |
| | Los Angeles County |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Super. Ct. No. 22CCJP02312A-B |
| Plaintiff and Respondent, | |
| v. | |
| A.G., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Philip L. Soto, Judge.  Affirmed.

Akila A. Shenoy, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

**SUMMARY**

The father in this dependency proceeding appeals from orders terminating reunification services for his two young sons. Father was incarcerated at the time and contends the juvenile court abused its discretion in refusing his request for a continuance of the review hearings. He points out the Los Angeles County Department of Children and Family Services (Department) filed its report four days, rather than 10 days, before the hearing, changing its recommendation from continued reunification services to termination of services, and his counsel could not reach father in custody to discuss the report with him. Father contends this defect in notice was not harmless; he was entitled to an additional six months of reunification services; and substantial evidence did not support the court's finding that the Department provided reasonable services to him.

We affirm the orders.

**FACTS**

M.G. was born in October 2021 and detained from both parents in June 2022. In August 2022, the juvenile court sustained allegations that the parents had a history of engaging in domestic violence, including in the child's presence; they knowingly violated court orders by entering the caregiver's (paternal grandmother's) home, engaging in a violent physical altercation with her and abducting the child; father failed to protect the child, knowing of mother's mental and emotional problems; and father had a history of mental and emotional problems including erratic behaviors, aggression, and explosive anger, making him incapable of providing regular care for M.G.

A.K.G. was born a month later, in September 2022, and was detained from both parents in November 2022; similar

2

allegations to those just described were sustained in February 2023.  Plaintiff was incarcerated for robbery in March 2023.

The two dependency cases proceeded on the same hearing dates.  Thus, the juvenile court sustained the allegations concerning A.K.G. and removed him from his parents, ordering reunification services, on February 7, 2023, and on the same day held the six-month status review hearing (Welf. & Inst. Code, § 366.21, subd. (e)) for M.G.  (Further undesignated statutory references are to the Welfare and Institutions Code.)  Following are some of the details from the hearings that occurred through that date.

At many of the hearings that preceded his incarceration, father was repeatedly admonished for his disruptive behavior.  At the June 16, 2022 detention hearing for M.G., father was admonished for talking during the hearing and interrupting the court.  The court eventually told him to leave the hearing because he would not stop talking, raising his voice and arguing with the court.

At the August 8, 2022 adjudication hearing for M.G., father was again admonished for interrupting the court, and he accused Department counsel of "making up stuff," stating, "This is like some bullshit."  Father again began talking while minor's counsel was speaking, and the court remarked that "I don't know what to do to deal with the father's impulse control issues in court and his inability to remain silent for short periods of time."  At that hearing, father was ordered, among other things, to attend a 52-week batterer intervention program; parenting education and individual counseling to address case issues; and submit to a psychiatric evaluation.  The court set February 7, 2023 for the section 366.21, subdivision (e) six-month status review hearing,

and August 7, 2023 for the section 366.21, subdivision (f) 12-month hearing.

At the November 17, 2022 detention hearing for A.K.G., the bailiff admonished father to be quiet or he would be escorted out, and the court later told father "to stop interrupting; is that clear?" The court told father to "[s]top attacking the social workers and start getting your programming done," and "I'm not going to tell you again. I'm not going to sit here and argue with you."

At the February 7, 2023 adjudication hearing for A.K.G., when the court sustained the allegation concerning father's "erratic behaviors, aggression, and explosive anger," the court observed that father "has explosive anger while not making progress—or much progress towards eliminating that." The court again ordered the 52-week domestic violence group for perpetrators, parenting education, individual counseling, and psychological assessment (including to address father's anger management problems). The court set A.K.G.'s six-month status review hearing on August 7, 2023. The court warned both parents that "[y]ou must be in full compliance with your case plan over the next six months to continue to receive services."

Concerning M.G., the court observed that father had not complied with the court's previous orders about not going near the mother or the home and continued: "Nor has he participated in programs to realize how his behavior is—puts his child at risk of physical and emotional harm." Father did not comply with the requirement not to visit when mother was there, and two visits in November 2022 "had to be canceled because of his erratic behavior." On an October 2022 visit, father "became very erratic when instructed to comply with court orders" and used profanity

4

with the social worker while walking out of the room. The court found father was "in minimal compliance" with his case plan, and warned both parents that "this is your last six-month period of time for which to comply with the court's orders in order to regain custody."

Six weeks later, on March 22, 2023, father was arrested for robbery and remained incarcerated at the time of the August 7, 2023 hearing. During this time, he called the social worker several times. In May 2023, he told the social worker he would contact her after a scheduled June 1 hearing. He "stated that he was unable to continue any counseling programs that were Court ordered while in jail as he was considered 'high level' thus had no access to attend programs." He called again on June 20, 2023, and said he was given a plea deal of 180 days jail time, with a hearing set for July 27, 2023.

The Department's status review report for both children was due on July 25, 2023. On that day, the Department filed a "last minute information," requesting a continuance for receipt of its reports to August 2, 2023, for the August 7 hearings. The court granted the request. The notices that had been mailed to father on July 24, 2023, stated the Department's recommendation was for continued family reunification.

On July 31, 2023, father called the social worker from jail to say he had been convicted of receiving stolen property and would be released on probation on September 14, 2023; he was advised in criminal court that he needed to complete 16 parenting classes and 27 domestic violence classes; and he would contact the social worker as soon as he was released.

The Department filed its status review report on August 3, 2023. The report acknowledged that notices to father were sent

with a recommendation of continued family reunification; "however upon further review of the father's compliance, change in behavior and the timeframe he's had to make the changes, the recommendation has changed to terminate Reunification."

Among other points, the Department's report stated that, as previously reported on February 7, 2023, father had only attended two classes of the domestic violence program and then was terminated. This was based on a January 4, 2023 progress report from the provider, Single Parents of Power, which stated that father had completed two sessions and "needs to enroll again." The provider also reported that father had participated in 16 parenting classes and was "very consistent in attending" those and "very concerned with reunifying with his children."

The Department's report concluded that father had not made substantial progress and, although he was currently incarcerated, "he had about 8 months before then . . . to make progress" but had minimal attendance and did not finish any program, and by his own admission could not attend any program "given that he is in a section in jail where that is not an option."

At the August 7, 2023 hearing, father's counsel requested a continuance. Counsel argued that the Department made no effort to provide services to father while he was incarcerated, so there were "no reasonable efforts on the part of the Department and, therefore, my client is entitled to an additional six months of services as the Department was ordered to provide services to an incarcerated parent." The court responded by stating its understanding that father "was in some kind of high security facility and no services were available. So how is it unreasonable if they cannot provide services when they're not available?" Counsel replied that he (counsel) did not have "definitive proof

6

that is correct."  The Department argued that "you can't just land yourself in jail after [family reunification] services are already ordered and then say, well, now I'm in jail and you're not providing me reasonable services because of, you know, what I'm not able to get in jail."

The court then asked father's counsel if there was "any other evidence of father trying to maintain contact with the children since he's been incarcerated," and counsel replied that "I have been unable to reach father since I learned of his incarceration, and I cannot respond to that."  Counsel wanted "to set the matter for a contested hearing in order to appropriately prepare on that issue."  The court observed that "that's what I thought we were about here was the contest."  When asked if there was anything else he wanted to say on father's behalf, counsel replied that "it is very difficult to set up a telephone— confidential telephone interview with an individual in custody in a short period of time, and I was unable to do so.  And on that basis, I'm requesting a continuance."

The court stated:  "I appreciate the difficulty, but under the circumstances here, I'm not going to put this over any more time. We need to move on.  Father can certainly have visits arranged upon his release. . . .  But these are very young children, and we need to move on to determine whether or not mother can reunify or we need to go on to permanency with the current caretakers."

The court continued by noting that "we have Title XX's," and the court's practice was "to order those for the contest which was set for today."  ("Title XX's" are "delivered service log[s]" of all contacts, services and visits by the Department.  The log for February 7, 2023 to August 4, 2023, was electronically filed by the Department on August 4, 2023.)  The court stated the log

"would demonstrate from the entry on 2-14-23, father's inability or inaction in maintaining face-to-face contact with the children. That was before his incarceration in March, which does have to be considered by this court as the father's conduct to put him in a place where he can't continue his services. Which, by the way, were not—from my reading of the report, were not going very well before he was incarcerated, claiming he couldn't visit or attend services because of his work schedule."

The court stated father "could have maintained contact" and "could have asked the social workers to allow him to have telephone calls, cards, letters, things of that nature" after he was incarcerated, but "none of that was done by him. And if they couldn't reasonably service him because of his security status, they can't be said to have not reasonably serviced the case. [¶] It's father's conduct that got him into a situation where services were not able to be provided. And he didn't do anything while incarcerated to try and maintain contact with the children." The court found "by clear and convincing evidence father is not in substantial compliance," there was "not a substantial probability of return of the children," and the Department was no longer obligated to extend services for him.

Father filed a timely appeal.

## DISCUSSION

Father argues the juvenile court abused its discretion in denying his request for a continuance; the defect in notice of the August 7, 2023 review hearings was not harmless; and father was entitled to an additional six months of reunification services. We reject each of these contentions.

The relevant principles are these. Under section 366.21, the Department must file its status review report at least

8

10 calendar days before the hearing, including its recommendation for disposition.  (*Id.,* subd. (c).)  But " '[i]f the outcome of a proceeding has not been affected, denial of a right to notice and a hearing may be deemed harmless and reversal is not required.' "  (*In re A.D.* (2011) 196 Cal.App.4th 1319, 1327 (*A.D.*), quoting *In re James F.* (2008) 42 Cal.4th 901, 918; *A.D.,* at p. 1325 ["a failure to give notice in dependency proceedings is subject to a harmless error analysis"; the appealing party must show "a more favorable result was likely absent the error"].)

Similarly, we review the juvenile court's denial of a continuance for abuse of discretion, and discretion is abused " ' "when a decision is arbitrary, capricious or patently absurd and results in a manifest miscarriage of justice." ' "  (*In re D.N.* (2020) 56 Cal.App.5th 741, 756 (*D.N.*).)  The court may grant a continuance of a review hearing beyond the time limit, but not if the continuance is "contrary to the interest of the minor" and "only upon a showing of good cause."  (§ 352, subd. (a)(1) & (2).)

Here, father claims prejudicial error due to the court denying a continuance of the review hearings under circumstances where the Department filed its report four rather than 10 days before the hearing and, in the report, changed its recommendation from continued reunification services to termination of services, and where counsel could not reach father in custody to discuss the report with him in advance of the hearing.  Father contends that as a result of the untimely notice, counsel did not have a reasonable opportunity to interview him "about the facts alleged in the reports, identify discrepancies . . . based on statements provided by [father], identify and discuss evidence omitted from the reports, obtain evidence excluded from the reports, discuss [father's] desire to testify, subpoena

9

witnesses, prepare direct and cross-examination, and gather any other information to challenge the Department's recommendation."

Father fails to explain how any of the items he lists "impacted the outcome of the hearings." He simply claims that the children's interest in the prompt resolution of their cases "would not have been impacted by a brief continuance." Whether or not that is so is irrelevant because that is not the standard. The question is whether father has shown he would have obtained a more favorable result if the continuance had been granted. He asserts "he would have had an opportunity to relay helpful information to his counsel, and there is a reasonable probability that the court would have granted Father an additional six months of reunification services." But he does not identify any "helpful information" he would have provided if the court had granted a continuance.

Father asserts his counsel did not have "definitive proof" that father could not continue his court-ordered programs while in jail because of his "high security" status, but that does not demonstrate the juvenile court abused its discretion; there was substantial evidence supporting that conclusion. Then he asserts that if he were in a "high security" status because of his cooperation with law enforcement, "this would have been a favorable extenuating circumstance," but that is just another "if" and again does not demonstrate an abuse of discretion. Then father complains the Department "failed to report on any contact the Father had with the children while he was in custody," and if the report had been timely, he could have conferred with counsel "and informed the court accordingly about Father's efforts to maintain contact with his children."

10

Notably, father does not identify any such contact with the children, or any efforts to contact them except one:  the Department's "delivered service log" for April 19, 2023, reports the social worker visited father in custody that day and father told him he would like to see his children "if it is possible"; the social worker told him "he would look into it with the jail facility, as he [the social worker] does not know if they allow visits and who would monitor." Father complains there is "no indication in the reports than any social worker followed up with Father's request."  Again, this does not establish the likelihood of a different result if counsel had been able to discuss the point with father; indeed, it is fair to infer that a facility that would not allow participation in family reunification services would likewise not arrange for monitored visitation with a then-one-and-a-half-year-old toddler and an eight-month-old baby.

In short, father has not established that "a more favorable result was likely" absent the Department's failure to give timely notice of its report and recommendation (*A.D., supra,* 196 Cal.App.4th at p. 1325), nor that the denial of a continuance " ' "result[ed] in a manifest miscarriage of justice" ' " (*D.N., supra,* 56 Cal.App.5th at p. 756).

Taking another tack, father contends substantial evidence does not support a finding that reasonable services were provided to him (*In re K.C.* (2012) 212 Cal.App.4th 323, 329), and therefore he was entitled to an additional six months of services.  (The court found the Department "has complied with the case plan by making reasonable efforts to return the child to a safe home . . . .")  Father says he is entitled to more services because the Department "consistently failed to facilitate a psychiatric evaluation for Father"; "failed to facilitate visits or contact

11

between Father and his children while Father was in custody"; and "failed to connect Father to any services prior to or during his incarceration."

The last two claims are patently erroneous. The record supports the conclusion that services and visits did not occur because of father's felonious conduct, not due to any failure by the Department. The claim that the Department did not connect father to services before his incarceration is contradicted by the evidence, for example, that he enrolled in a 52-week domestic violence offenders' program and then attended only twice.

We likewise reject father's claim he should receive six more months of services because he "never had the opportunity to participate in and receive the benefits of a mental health evaluation." While the court ordered a "[p]sychological assessment/730" for father on February 7, 2023 (as well similar orders six months earlier at M.G.'s disposition hearing and two and a half months earlier at A.K.G.'s detention hearing),[1] father's own recounting points out that "there may have been challenges to obtaining a psychiatric evaluation." Indeed, the court observed when addressing the mother on the same topic that "the [Evidence Code, section] 730 evaluators are all very good, but they have a huge backlog," and the court "can't guarantee you

---

[1] These were orders that father "is to submit to a psychiatric evaluation" (Aug. 8, 2022), and that the Department is "to give [father] referrals and to assist the parents in getting into a [Department]-approved assessment for mental health issues" (Nov. 17, 2022). Notably, when the court ordered father's mental health assessment in November 2022, father interrupted the court twice, said "I'm done," and had to be admonished by the bailiff.

12

that they'll be done and ready with your evaluation, 730 evaluation" within the ensuing six months.

In short, we cannot find a lack of reasonable efforts by the Department, particularly in light of father's "minimal compliance" during his first six months of services and his incarceration without access to services during most of the second six months.

Next, father contends the record does not support the finding that he did not substantially comply with his case plan. The record we have recited shows otherwise. Father glosses over the fact that he essentially ignored the required 52-week domestic violence perpetrator program, despite the sustained allegations that brought on these dependency proceedings: his history of engaging in domestic violence, including in the child's presence, and knowing violation of court orders by engaging in a violent physical altercation and abducting M.G. This alone constitutes substantial evidence he was not in substantial compliance with his case plan.

Finally, father contends the juvenile court applied the wrong legal standard for A.K.G.'s six-month review hearing and that the error was not harmless. (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 180 (*M.V.*) [§ 366.21, "subdivision (e) asks whether there is a substantial probability the child *may* be reunited with the parent by the 12-month review; subdivision (g)(1) asks whether there is a substantial probability the child *will* be reunited with the parent by the 18-month review"].) At the hearing, the court found "that there's not a substantial probability of return of the children."

To support his contention, father cites the favorable comments in Department reports ("[m]other and father are

currently participating in most court[-]ordered classes" and "are able to apply the skills learned from parenting classes" during visits), but omits pertinent items on the very same page of the same report: "Father . . . continues to display very erratic behavior and mood changes while interacting with [the Department's] staff. Father continues to display aggression. Father has yet to identify/address any of the court orders. The father is not yet enrolled in [a] domestic violence program. . . . Father was recently arrested on 9/16/22 with battery on person. This conduct is not safe for children." But whether or not the court applied the correct standard for a six-month review, father was required to show a reasonable probability he "could have obtained a more favorable result" had the court applied the correct standard. (*M.V., supra,* 167 Cal.App.4th at p. 183.) He has not done so.

## DISPOSITION

The juvenile court's orders terminating reunification services are affirmed.


GRIMES, Acting P. J.

WE CONCUR:


WILEY, J.


VIRAMONTES, J.

14