Filed 12/19/13  In re Nicole V. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re NICOLE V., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, | G048405 |
| Plaintiff and Respondent, | (Super. Ct. No. DP019575) |
| v. | O P I N I O N |
| B.P., | |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Jacki C. Brown, Judge.  Affirmed.

Michele Anne Cella, under appointment by the Court of Appeal, for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, and Karen L. Christensen and Julie J. Agin, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

\*          \*          \*

Nicole is three years old and was removed from her parents' custody within days of her birth. She has lived with her foster parents since she was less than a month old. After 18 months of reunification services proved unsuccessful, the juvenile court terminated the services and ultimately terminated the parents' parental rights. Her mother appeals,[1] arguing the court should have found the exception listed in Welfare and Institutions Code section 366.26, subdivision (c)(1)(B)(i) applies in this case. We affirm.

I

FACTS

In June 2007, B. P. (Mother), who has had an ongoing drug problem since she was 13 years old, gave birth to Victor. She and Victor each tested positive for the presence of methamphetamine. Victor, his brothers Antonio and Jonathan, and his sister Samantha were taken into protective custody and eventually declared dependent children of the juvenile court. The whereabouts of Samantha's father and the father of Antonio and Jonathan were unknown. Victor's father was incarcerated at the time. Mother received over two years of reunification services.

In late July 2009, the four children were sent home to Mother for a 60-day trial visit. That visit was cut short in the middle of August because while they were solely in Mother's care, Jonathan and Victor sustained multiple nonaccidental injuries which need not be detailed here. Additionally, Victor was suffering from recent malnutrition. Mother failed to successfully reunify with her children.

In March 2010, Nicole was born to Mother and Enrique V. (Father). Within days of her birth, a petition was filed in the juvenile court pursuant to Welfare and

---

[1] Father did not appeal. Because Father is not a party to this appeal, we do not focus on his efforts at reunification.

Institutions Code[2] section 300, alleging a substantial risk of harm to Nicole if she remained with Mother and Father based on the injuries her siblings sustained while in Mother's care. The court temporarily placed Nicole with child welfare services. She resided at Orangewood Children's Home until the middle of April. She was then placed in a foster home.

Mother and Father submitted on the petition and stipulated to a factual basis for the petition on May 18, 2010. The court declared Nicole a dependent child of the court and found clear and convincing evidence there was a substantial danger to Nicole's physical health, safety, or physical or emotional well-being if custody was vested in Mother and Father. (§ 361, subd. (c)(1).) Reunification services, including therapy, parenting classes, drug treatment, random alcohol and drug testing, and visitation were ordered.

The court eventually conducted an 18-month review on November 14, 2011. The court found clear and convincing evidence that returning Nicole to her parents would create a substantial risk to her safety, protection, or physical or emotional well-being, and that Mother's progress in alleviating the causes that necessitated placement has been minimal to moderate. As a result, the court terminated reunification services and ordered a hearing pursuant to section 366.26, subdivision (a) be held within 120 days. (§ 366.22, subd. (a).)

After a number of continuances, the permanency hearing was eventually held on April 18 and April 30, 2013. Nicole was then three years old. Although reunification services had been terminated, Mother continued in random drug testing and counseling, although the initial section 366.26 report—there were 17 addendum reports— stated Mother had been discharged from counseling services because she had three

---

[2] All undesignated statutory references are to the Welfare and Institutions Code.

3

consecutive no-shows, and a subsequent report stated Mother failed to complete the child abuse treatment program. Although she generally presented negative drug tests, Mother missed a number of random tests and tested positive for opiates in January 2012. She obtained the drug by using a fake name and birth date. That same month she was arrested for sexual abuse with a minor. She was released from custody and the investigation was ongoing.

Mother consistently visited Nicole, but she missed a number of the visits and was routinely 15 to 45 minutes late when she did appear. Mother customarily brought meals for Nicole and her siblings, but Nicole rarely ate with her siblings and Mother. Mother did not closely supervise Nicole during the visits. On one occasion she left Nicole unattended in one room while she charged her cell phone in another room. The foster father monitored visits and would have to remind Mother that she was responsible for controlling the children during visitation. When he did, Mother would become furious. On one occasion, apparently at the Eckhoff Children and Family Services office, where the visits were changed to in order to provide a more contained area, a deputy sheriff felt compelled to tell the children they could not run around the visitation area. Mother responded, "you can't do anything." The foster mother said Mother refuses to properly care for Nicole during the visits. Additionally it was observed Mother does not comply with monitored visitation regulations, often times leaving the area of the monitor.

In those visitations where Mother and Father were each present, Nicole interacted mostly with Father. In fact, Mother complained that Nicole only wanted to interact with Father, and not her. If Nicole became sleepy during the visit, she would seek out the foster parent who was present. One report indicated Nicole runs to her foster mother to hug her after a visit. As Nicole got older she spent her visitation time playing

4

with other children, demonstrating "little to no interest in interacting with her mother." The social worker observed that when a visit is over, Nicole immediately adjusts to her daily routine with her foster parents.

An addendum report stated Nicole was likely to be adopted by her foster parents who are adopting another of Nicole's siblings and are legal guardians for her older siblings. She has a strong relationship with her siblings. Nicole refers to her foster parents as "mama" and "papa." Nicole's foster mother adores Nicole and Nicole tells her she loves her. The foster parents have demonstrated their ability to ensure Nicole's health, safety, and welfare. According to a report submitted to the court, Nicole appears to be thriving in their home.

At the conclusion of the section 366.26 hearing, the court found it was likely Nicole would be adopted, ordered parental rights of Father and Mother terminated, and ordered adoption as the permanent plan. Mother filed a timely notice of appeal.

II

DISCUSSION

*Standard of Review*

The juvenile court's order terminating Mother's parental rights is presumed to be correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) We review the trial court's order terminating parental rights for substantial evidence supporting the court's decision, viewing the evidence in the light most favorable to the judgment. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 423.) Thus, we do not reweigh the evidence. Rather, we only """decide if the evidence [in support of the judgment] is reasonable, credible and of solid value—such that a reasonable trier of fact could find that termination of parental rights is appropriate based on clear and convincing evidence. [Citation.]"' [Citations.]" (*Ibid.*)

5

*Reunification Services and Their Termination*

When a child has been removed from the family home, services are generally supplied to the child and her parents in an effort to reunify the family (Welf. & Inst. Code, 361.5, subd. (a)), because the law prefers family relationships be maintained (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1228) so long as the welfare of the child can be safeguarded (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307). To that end, "the focus of reunification services is to remedy those problems which led to the removal of the children . . . ." (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1464.)

The Legislature generally requires reunification services be provided for 12 months when the child was three years of age or older when removed from her parents' physical custody. (§ 361.5, subd. (a)(1)(A).) However, when the child was under three years of age when initially removed from her parents' physical custody, the court is limited to ordering reunification services "for a period of six months from the dispositional hearing as provided in subdivision (e) of Section 366.21, but no longer than 12 months from the date the child entered foster care as provided in Section 361.49 unless the child is returned to the home of the parent or guardian" (§ 361.5, subd. (a)(1)(B)). The reason for the shortened period of authorized reunification services is because the needs of a child of such tender years "justifies a greater emphasis on establishing permanency and stability earlier in the dependency process . . . ." (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 175.)

Until the court terminates reunification services and sets a section 366.26 hearing, a parent's interest in the companionship of her child and preservation of the family unit prevails over the child's interest in a permanent and stable placement.[3] But

---

[3] The goal of a section 366.22 hearing is to provide a dependent child of the juvenile court with a permanent, stable home. (§ 366.26, subd. (b).) The preferred method of doing so is to terminate the right of the parents and to place the child up for adoption. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573; § 366.26, subd. (c)(1).)

once reunification services have been terminated and the court sets a section 366.26 hearing, the court's focus shifts and the child's need for permanency and stability prevails over the parent's interests. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 446-447.)

Nicole was taken into protective custody within days of her birth in March 2010. The court provided Nicole's parents reunification services for 18 months. The services were terminated and a section 366.26 hearing calendared only when the court found clear and convincing evidence to the effect that returning Nicole to her parents would create a substantial risk to her safety, protection, or physical or emotional well-being, and that Mother's efforts to alleviate the causes that necessitated Nicole's removal had been minimal to moderate. (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 308; §§ 366.21, subd. (f), 366.22, subd. (a).) The issue of the propriety of those findings is not before us. (*In re Michelle M.* (1992) 4 Cal.App.4th 1024, 1030-1031 [issues related to decision to terminate reunification services must be reviewed by way of writ petition, not subsequent appeal from termination of parental rights].)

*The Trial Court did not err in Terminating Mother's Parental Rights*

What is before us is the propriety of the juvenile court's decision terminating Mother's parental rights. Once the court terminated reunification services with an eye to adoption, the burden shifted to Mother to demonstrate termination of her parental rights and Nicole's adoption would be detrimental to Nicole under one or more statutory exceptions. (*In re Tabatha G.* (1996) 45 Cal.App.4th 1159, 1164; § 366.26, subd. (c)(1)(B).) In the present case, Mother contends termination of her rights would be detrimental to Nicole under section 366.26, subdivision (c)(1)(B)(i).

That subdivision applies when "[t]he parents have maintained regular visitation and contact with the child *and* the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i), italics added.) Mother exercised her visitation privileges during the 18-month reunification period as well as the 17 plus

7

months between the termination of reunification services and the section 366.26 hearing. Although she missed visits from time to time and was routinely late to the visits she made, it cannot be said that she did not maintain regular visits with Nicole. But regular visits are not enough. There is a second component to this exception to the adoption preference—the child would benefit from continuing the relationship.

"'To trigger the application of the parental relationship exception, the parent must show the parent-child relationship is sufficiently strong that the child would suffer detriment from its termination.' [Citation.] A beneficial relationship 'is one that "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." [Citation.] The existence of this relationship is determined by "[t]he age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs." [Citation.]' [Citation.]" (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 643.) For Mother to meet her burden of proof, she must show more than pleasant visits or that she has loving contact with Nicole during visits. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 229) "In order to overcome the statutory preference for adoption, the parent must prove he or she occupies a parental role in the child's life, resulting in a significant, positive emotional attachment of the child to the parent. [Citations.]" (*Ibid.*) Put another way, "if severing the existing parental relationship would deprive the child of 'a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.' [Citation.] In other words, if an adoptable child will not suffer great detriment by terminating parental rights, the court must select adoption as the permanency plan. [Citation.]" (*Ibid*.) This is where Mother's challenge fails.

Nicole was three years old at the time Mother's parental rights were terminated. She had never lived with Mother, having been placed in protective custody

8

while she was still in the hospital shortly after birth. Roughly a month after birth she was placed with the foster parents. Nicole has lived the rest of her life with her foster parents. Mother has never filled a parental role in Nicole's life. Nicole's foster parents have fulfilled that role. They continue to raise Nicole and hope to adopt her, keeping her with her siblings. Mother did not function in a parental role during visits either. She brought food to the visits so she, Nicole and Nicole's siblings could have a meal together, but she routinely failed to change or delayed changing Nicole's diaper, leading to repeated instances diaper rash. And Nicole rarely ate with her siblings and Mother.

As Nicole got older and more independent, Mother did not supervise Nicole's activities during the visits. For example, Mother left Nicole unattended in one room while she (Mother) charged her cell phone in another room. Mother would reportedly become furious when the foster father, who was present to monitor the visits, informed her that she was responsible for controlling the children during the visits. On one such occasion when Mother was not controlling the children, a deputy sheriff who was present told the children they could not run around in the visitation area. Mother responded, "you can't do anything." Toward the end of the years of visits, Nicole spent her time running around and playing with other children during the visits, demonstrating "little to no interest in interacting with her mother." Although Nicole enjoyed the visits, there is no evidence from which the court was required to conclude Nicole would be harmed by terminating Mother's parental rights.

We conclude the trial court did not err in not concluding the exception set forth in section 366.26, subdivision (c)(1)(B)(i) applied, whether the decision is reviewed for substantial evidence (see *In re Autumn H.*, *supra*, 27 Cal.App.4th at pp. 575-577), an abuse of discretion (see *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351), or aspects of both (see *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.) Accordingly, we affirm the juvenile court's order terminating Mother's parental rights.

9

## III

The order of the juvenile court is affirmed.

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

RYLAARSDAM, J.