Filed 6/23/15  Julio V. v. Super. Ct. CA22/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JULIO V.,<br><br>  Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY,<br><br>  Respondent;<br><br>SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>  Real Party in Interest. | 2d Civil No. B261956<br>(Super. Ct. No. JV 46501)<br>(San Luis Obispo County) |

Julio V. (father) petitions for extraordinary writ review of the juvenile court's order terminating reunification services and setting a permanent plan hearing regarding his minor children J.V. and L.V.  (Welf. & Inst. Code,[1] §§ 366.21, subd. (e), 366.26, subd. (c).)  We deny the petition.

---

[1] All further statutory references are to the Welfare and Institutions Code.

FACTUAL AND PROCEDURAL HISTORY

*Jurisdiction and Disposition*

On April 29, 2013, San Luis Obispo County Department of Social Services (DSS) filed a dependency petition as to 13-month-old J.V. and one-month-old L.V. alleging failure to protect. (§ 300, subd. (b).) The petition alleged that the minors' mother, Bianca H. (mother),[2] had not received prenatal care for L.V. and that L.V. had tested positive for marijuana at birth. Both parents abused drugs and engaged in domestic violence while the minors were present. Father also had a significant criminal history including drug-related charges and domestic violence. Although the parents had agreed to participate in substance abuse treatment, neither of them had completed an assessment.

At a contested detention hearing on May 1, 2013, father was declared the presumed father of the children. Both parents agreed to complete a drug and alcohol assessment, enroll in counseling, and meet twice with the public health nurse prior to the continued hearing set for May 9, 2013. At the May 9th hearing, the minors were returned to mother on the condition they stay at a local homeless shelter. A combined jurisdiction and disposition hearing was set for June 5, 2013.

Prior to the June 5th hearing, DSS reported that father had been arrested again for domestic violence against mother. DSS also received another referral that mother was still smoking marijuana and driving the minors while unlicensed. Both parents' drug tests from the prior week were positive for marijuana.

On May 23, 2013, the court ordered DSS to detain the minors if either child tested positive for marijuana or either parent drove them without a valid license. Six days later, DSS removed the minors and filed a section 387 supplemental petition. DSS reported that father had brought the minors in and requested that DSS take custody of them. Father told the social worker he and mother were still using and were attempting

---

[2] Mother is not a party to this writ.

to falsify their drug test results. He added that neither parent had the means to care for the minors and stated his belief that the children should stay in foster care until both parents had dealt with their issues. Staff at the center where the minors were staying indicated that father had removed the minors without permission after mother refused to leave with them.

The minors were ordered detained under the supplemental petition and the matter was set for a contested jurisdiction and disposition hearing on July 3, 2013. The minors were placed in foster care and both parents were allowed visitation.

At the July 3rd hearing, both parents were in custody and submitted on DSS's recommendation that the court take jurisdiction over the minors and award both parents six months of family reunification services. The court did so and set the matter for three- and six-month review hearings. Both parents were granted jail visits with the minors.

*Three-Month, Six-Month, and Twelve-Month Reviews*

At the three-month review hearing on October 2, 2013, DSS reported that father was granted probation on August 20th. Upon his release he immediately met with drug and alcohol services (DAS), participated in family treatment court (FTC), and began working. Father's DAS counselor reported that father "is doing well with his treatment . . . and continues to show a commitment to working on his treatment plan." Mother, who was still in jail and on disciplinary lockdown, wanted the minors to be placed with father or her brother.

At the six-month review hearing, DSS reported that father was complying with his case plan and had advanced to the second phase of FTC with negative drug tests. He visited the children weekly and was about to begin a parenting class. He continued to request that the minors be placed in his care, but his requests were denied because he did not have stable housing and continued to drive without a license.

At a mediation hearing on January 7, 2014, DSS agreed to continue to assist father in obtaining housing and scheduling his groups and classes to accommodate

3

his work schedule. Father agreed not to drive while unlicensed. When the FTC commissioner was just about to reinstate father's license, however, father received another ticket for driving with a suspended license.

At the conclusion of the six-month review hearing, the court adopted the mediation agreement and extended reunification services for an additional six months. Father's progress on his case plan was deemed "adequate."

At the June 11, 2014, 12-month review hearing, DSS recommended that services be continued for an additional six months. Father was incarcerated at the time under a 45-day sentence as a result of repeated instances of driving without a license. Although he was "making every effort to stay compliant with his Case Plan," he was not ready or able to be the primary care provider for the children. The social worker was also concerned by the fact that father occasionally arrived late for treatment or visits and had exhibited "rude" and "unruly" behavior toward other DSS employees during the prior six-month period.

In March 2014, father received his first "strike" in FTC for failing to show up for group treatment and for failing to arrive on time despite prior warnings. He received his second strike the following month for "disruptive behavior displayed . . . in front of both children and adult participants." He was "reminded that his behavior will not be tolerated and any further issues would result in him being struck out of treatment." After father was released from jail, he obtained secure housing and his visits with the children were expanded.

At the conclusion of the 12-month review hearing, the court extended services for an additional 6 months and set the matter for an 18-month hearing on October 29, 2014. DSS was given discretion to expand visits to overnight and a 30-day visit when safe and appropriate for the children. On June 16, 2014, father was advanced to the third phase of FTC.

*Eighteen-Month Review and Termination of Parental Rights*

On August 25, 2014, DSS filed a section 388 petition to change father's visitation with the minors from unsupervised to supervised. DSS reported that father had received his third and final strike in FTC for failing to show up for a drug test on July 21, 2014, and had declined the opportunity to reenter the program. He had also been terminated from DAS due to his repeated failure to follow directions. In addition, the children had become more aggressive since their visitation and overnight visits with father were increased in June.

On September 10, 2014, father filed a section 388 petition seeking dismissal of the dependency action and the return of the minors to his care. Father stated that he had obtained his driver's license, had a secure home and a full-time job, and was participating in counseling. He attributed his frequent lateness in arriving for appointments to his employment and thought DSS had unfairly labeled him as "having a bad attitude" based on his complaints about a bruise J.V. incurred while in the care of her foster parents. Father stated his belief "that he has done more than enough to have his children returned to him, yet more and more is being requested of him. He believes his children should be returned, regardless of his status at FTC, because he has proven himself to be a capable and sober parent."

On October 1, 2014, DSS withdrew its section 388 petition without prejudice. In its 18-month review report, DSS recommended that services be continued for an additional 90 days to determine whether father was "gaining insight from services, including domestic violence groups or counseling, conjoint therapy with the children, and in-home parenting." If the 90-day period was successful, DSS recommended that it be followed by a 30-day visit. If that visit was successful, DSS recommended that father and the children be transitioned into family maintenance services. A continued 18-month review hearing and the hearing on father's section 388 petition were both set for December 3, 2014.

On November 17, 2014, Kathy Osgood, father's domestic violence prevention therapist, submitted a report expressing reservations about father's continued treatment. Osgood stated, "Initially I believed that he was benefitting from the program, but in time he began a pattern of irregular attendance, excuse-making, and behaviors that made me conclude that he is not committed to making positive changes." Osgood also knew he was romantically involved with a woman (Candice) who abused drugs. Father's refusal to acknowledge this relationship led Osgood "to conclude that he is unwilling to be honest and address his relationship issues." Osgood also expressed concerns about father's prior substance abuse and noted "[i]n my experience those who simply quit on their own, without support, end up relapsing."

On November 19, 2014, the social worker sent a letter notifying father that he was not complying with his case plan and that DSS was "changing its recommendation in regard to reunification[.]" After referring to father's behavioral and attendance problems, the social worker recounted telling him on numerous occasions "not to have a certain female [Candice] around your children." Although father denied doing so, several people had confirmed otherwise. The social worker also knew Candice was actively using drugs, and that father had verbally argued with her in front of the children. The social worker concluded that the children "are not safe under the circumstances" and that "[g]iven the timeline on this case, there is no further time to rectify this situation."

On November 20, 2014, DSS filed a section 388 petition requesting that reunification services be terminated and the matter be set for a section 366.26 hearing. On December 3, 2014, a continued hearing on all three matters (the 18-month review, father's section 388 petition, and DSS's section 388 petition) was set and later continued to February 6, 2015. In the meantime, father was ordered to refrain from having Candice present in his home.

Father testified on his own behalf at the 18-month review hearing. He admitted that he had been romantically involved with Candice, yet claimed he was no longer seeing her. He also acknowledged he had continued seeing Candice and allowed

6

her in his home after he was told not to do so.  He disclaimed any knowledge of Candice's drug use.  On cross-examination, he admitted that he had yet to complete a parenting class and was still nine hours short of completing his 52-week batterer's intervention program.

The social worker testified that she changed her recommendation regarding reunification after she discovered father was still seeing Candice and allowed her to be present in front of the children.  She also noted father's pattern of being terminated from programs due to his behavior.

At the conclusion of the hearing, the court found father had failed to make sufficient progress in addressing the issues that precipitated the children's removal and that "there is a risk to [the] children to return them at this point."  The court accordingly terminated services and set the matter for a section 366.26 hearing.

DISCUSSION

Father contends the court's order must be reversed because DSS failed to prove that returning the children would present a substantial risk of detriment to them.  He claims the court's finding to the contrary is erroneous because he "participated in and completed services above and beyond those contained in [his] case plan."  We are not persuaded.

"Until reunification services are terminated, there is a statutory presumption that a dependent child will be returned to parental custody.  [Citation.]  As relevant here, section 366.22, subdivision (a) requires the juvenile court at the 18–month review hearing to return the child to the custody of the parent unless it determines, by a preponderance of the evidence, that return of the child would create a substantial risk of detriment to the child's physical or emotional well-being." (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400.)  DSS bore the burden of proving such detriment.  (*Ibid.*)  "In evaluating detriment, the juvenile court must consider the extent to which the parent participated in reunification services.  [Citations.]  The court must also consider the efforts or progress the parent has made toward eliminating the conditions that led to the child's out-of-home

7

placement. [Citations.]" (*Ibid.*) In reviewing the court's ruling, we view the record to determine whether it is supported by substantial evidence. (*Id.* at pp. 1400-1401.) We consider the evidence in the light most favorable to the prevailing party and resolve all evidentiary conflicts in support of the court's order. (*Id.* at p. 1401.)

Substantial evidence supports the court's finding that return of the children to their father would present a substantial risk of detriment to their safety, protection, or physical or emotional well-being. In arguing to the contrary, father makes no mention of his relationship with Candice or his open defiance of the order that he refrain from having her in his home. This conduct, coupled with father's ongoing behavioral problems, led the social worker to conclude he was "not committed to making" the changes he needed to make in order to adequately parent the children. The court explained to father that he had entered a relationship with another woman who abused drugs and had fought with her in front of the children, "which is the kind of incident that brought you and your wife and your children into court to begin with[.]" The court then told father it was thus "in a position where [it] cannot find that you have made substantive progress" in your case plan. This finding is "prima facie evidence that return would be detrimental." (§ 366.22, subd. (a).)

The court also noted that the case was "well past the 18-month hearing" and that father had run out of time to achieve reunification. Because both children were under the age of three at the time of their removal, the "presumptive rule" was that father would only be offered six months of services. (§ 361.5, subd. (a)(1)(B); *M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 174-175.) Although the court properly exercised its discretion to offer an additional 12 months of services, "'[a]bsent extraordinary circumstances, the 18-month review hearing constitutes a critical juncture at which "the court must return children to their parents and thereby achieve the goal of family preservation or terminate services and proceed to devising a permanent plan for the children." [Citation.]'" (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 306-307.) In light of father's reported behavioral problems, his continued failure to complete

8

his classes, and his recent prohibited contacts with Candice, we agree with DSS that "[a] finding of unique or extraordinary circumstances in order to extend services was not factually possible in this case."  Because father failed to demonstrate a change in circumstances, the court also properly denied his section 388 petition seeking dismissal of the action and the return of the minors to his care.

       The petition is denied.

       <u>NOT TO BE PUBLISHED.</u>



                   PERREN, J.


We concur:



GILBERT, P. J.



YEGAN, J.

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____

Theresa G. Klein for Petitioner.

No appearance for Respondent.

Rita L. Neal, County Counsel, Leslie H. Kraut, Deputy County Counsel, for Real Party in Interest.