Filed 6/6/16  R.R. v. Superior Court CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| R.R.,<br><br>      Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF STANISLAUS COUNTY,<br><br>      Respondent;<br><br>STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>      Real Party in Interest. | F073414<br><br>(Super. Ct. No. 517308)<br><br><br>**OPINION** |

-ooOoo-

<u>**THE COURT**</u>[*]

ORIGINAL PROCEEDING; petition for extraordinary writ review.  Ann Q. Ameral, Judge.

Thomas P. White, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

John P. Doering, County Counsel, and Robin Gozzo, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]     Before Gomes, Acting P.J., Poochigian, J. and Detjen, J.

R.R. (mother) seeks extraordinary writ review of the juvenile court's orders issued at a six-month review hearing (Welf. & Inst. Code, § 366.21, subd. (e))[1] terminating her reunification services and setting a section 366.26 hearing as to her 10-month-old daughter C.R. Mother contends the juvenile court erred in terminating her reunification services. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

Mother has a long history of methamphetamine use and child neglect. At the time of these proceedings, she had five older children, then ranging in age from five to seventeen years of age, who were not in her custody. Mother also has a history of aggressive and assaultive behavior. In May 2000, she was convicted of willful cruelty to a child after she smacked her then two-year-old son in the small of his back, causing severe redness. In March 2012, mother choked her then eight‑year-old daughter and pulled her hair. During the intervening years, the Stanislaus County Community Services Agency (agency) received many reports of mother's drug use, homelessness and neglect.

These dependency proceedings were initiated in July 2015 when mother gave birth prematurely to C.R., who tested positive for methamphetamine at the time of delivery. The agency took C.R. into protective custody at the hospital and placed her in foster care upon her release. C.R.'s alleged father stated he did not have stable housing and could not care for her.

In August 2015, the juvenile court exercised its dependency jurisdiction, removed C.R. from mother's custody, and approved a plan of reunification that required mother to participate in mental health, parenting and substance abuse services and weekly supervised visitation. The court set the six-month review hearing for February 2016.

In September 2015, the agency filed a section 388 petition asking the juvenile court to suspend mother's visits because mother assaulted C.R. during a visit on

---

[1]  Statutory references are to the Welfare and Institutions Code.

2

September 18.  Mother fell asleep during the visit multiple times, with C.R. cradled in her arm.  When the social worker woke her up and told her she would have to end the visit, mother became enraged and rose from the couch, causing C.R. to flip violently to the other side of her body.  Mother harshly flipped C.R. into her other arm, stating loudly, "Fuck you, this is my baby.  You can't end my visit.  This is my fucking newborn.  I get my two hours."  Mother ranted for approximately two minutes, all the while attempting to forcefully shove C.R. into her car seat.  However, because there were items in the car seat, mother yanked C.R. toward her chest and over to her left arm and threw the items in the car seat onto the floor.  C.R.'s head was flopping around as she did this.  The social worker was unable to remove C.R. from mother without endangering C.R. further.  Mother placed C.R. in the car seat after multiple requests and coaching by the staff.  Four days later, C.R.'s foster parents took her to the doctor because she was sleeping excessively and not tracking well.  The doctor ordered a computerized tomography scan to assess her for shaken baby syndrome.

The juvenile court suspended mother's visits and admonished her for her poor progress.  In December 2015, mother began to participate in her services in earnest.  She entered the Redwood Family Center, a clean and sober living program, and was reportedly doing well in her substance abuse and parenting services.  She had also met with a therapist who recommended she participate in a psychological evaluation.

In its report for the six-month review hearing, the agency recommended the juvenile court terminate mother's reunification services.  The agency reported that mother had made very little progress in her case plan and had only begun to engage very late in the process.  In addition, mother was essentially a stranger to C.R. since C.R. had not seen mother since the incident in September 2015.

In January 2016, prior to the hearing, mother's attorney filed a section 388 petition asking the juvenile court to reinstate visits.  Her attorney represented that mother took responsibility for her actions and was working on her court-ordered services.  He stated

3

that her state of mind had significantly changed and C.R. would no longer be at risk if visitation resumed.

In March 2016, the juvenile court conducted a contested combined hearing on the six-month review and the section 388 petition. Mother testified she began parenting classes and drug treatment in early January 2016, and would begin individual counseling four days after the hearing. She explained that she was "coming down off methamphetamine" and had an emotional outburst when she mishandled C.R. during that last visit in September. She did not believe she was a danger to C.R. any longer because she was in her "right mind."

The juvenile court questioned mother about her drug use. Mother stated she began using methamphetamine at the age of 15 or 16 and she was currently 37 years old. During that time, she abstained a couple of times for a year or a little longer, and completed two other substance abuse treatment programs.

The juvenile court found that the agency provided mother reasonable reunification services but that she failed to participate regularly and make substantive progress. The court stated:

> "You have 89 days clean, and that's certainly to be commended, but I don't find that it's really participating regularly and making substantive progress because at this point, I don't believe that there is any way that [C.R.] could be returned to you on or before August 20, 2016.… And given the significant history that you have with regard to substance abuse, and the fact that we don't even have a psychological evaluation, and, unfortunately, you haven't even been able to visit with your daughter because of the real serious danger that you put her in, I am not in a position to be able to continue your reunification services for an additional period of time."

The juvenile court terminated mother's reunification services, denied her section 388 petition, and set a section 366.26 hearing. This petition ensued.

4

Mother contends the juvenile court abused its discretion in not making a finding as to whether there was a substantial probability C.R. could be returned to her custody by the 12-month review hearing. She argues section 366.21, subdivision (e) and California Rules of Court, rule 5.710(c) require it. She further contends the juvenile court's error was not harmless because she could have reunified with C.R. before the 12-month review hearing. We find no error.

Section 366.21, subdivision (e) governs the proceedings at the six-month review hearing. Subdivision (e)(3) of section 366.21 ("the statute") addresses mother's issue. It provides in relevant part:

> "If the child was under three years of age on the date of the initial removal, … and the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court may schedule a hearing pursuant to Section 366.26.… If, however, the court finds there is a substantial probability that the child … may be returned to his or her parent … within six months or that reasonable services have not been provided, the court shall continue the case to the 12-month permanency hearing."[2]

The statute thus informs us, as pertinent to mother's issue, that the juvenile court must continue reunification services to the 12-month review hearing when the child was under the age of three years old when initially removed, as occurred here, and there is a substantial probability of return within six months. (§ 366.21, subd. (e).)

California Rules of Court, rule 5.710(c)(1)(D) (hereafter "the rule") incorporates the language of the statute and authorizes the juvenile court to set a section 366.26 hearing if the statute applies. It also sets forth a three-factor test the court should

---

[2]     Mother does not challenge the juvenile court's findings that she was provided reasonable reunification services and that she failed to participate regularly and make substantive progress. Consequently, we focus our analysis on the juvenile court's probability of return finding.

consider in assessing the probability of return, i.e.: (1) whether the parent consistently and regularly contacted and visited the child; (2) whether the parent made significant progress in resolving the problems that led to the removal of the child; and (3) whether the parent demonstrated the capacity and ability to complete the objectives of the treatment plan and to provide for the child's safety, protection, and physical and emotional well-being. (Cal. Rules of Court, rule 5.710(c)(1)(D)(i)(a)-(c).)

As a preliminary matter, we dispense with mother's contention that the statute and the rule require the juvenile court to make an express finding as to the probability of return. There is no such requirement. Even if such a requirement existed, we can infer a required finding if it is supported by substantial evidence. (*In re Corienna G.* (1989) 213 Cal.App.3d 73, 83.) Further, the juvenile court is not confined to the three-factor test of California Rules of Court, rule 5.710(c)(1)(D)(i)(a)-(c) in assessing the probability of return. Rather, the court can consider any relevant evidence. (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 183.)

To clarify, the juvenile court must continue reunification services if it finds there is a probability the child will be returned to parental custody by the 12-month review hearing. However, if the court finds there is not a probability of return, the court is not required to terminate reunification services and set a section 366.26 hearing. The court *may* terminate services, but it can also exercise its discretion and continue services to the 12-month review hearing.

We review the juvenile court's finding there is not a substantial probability of return for substantial evidence. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688-689.) Whether the juvenile court made the correct decision upon its findings of fact is reviewed under the abuse of discretion standard. (*In re Brequia Y.* (1997) 57 Cal.App.4th 1060, 1068.)

We conclude there was substantial evidence to support the juvenile court's finding there was not a substantial probability C.R. could be returned to mother's custody by

August 2016, the month in which the 12-month review hearing would have been scheduled.  As evidenced by the record, mother's drug use and violent disposition are so deeply entrenched that it is hard to imagine when C.R. could be safely returned to her custody.  Indeed, the record reflects that mother's assault of C.R. is very reminiscent of her assault on her son in 2000.  According to the police report in that case, the maternal grandmother saw mother hitting the child excessively hard and tried to intervene.  Mother, who was "coming down off drugs," told the grandmother the "kid" was hers and "she could do to him what she wanted to."  It seems nothing had changed in the ensuing 15 years leading up to C.R.'s birth when mother, again "coming down off methamphetamine" and asserting her perceived right to handle her children however she wanted, yanked her around like a rag doll.

We further conclude the juvenile court did not abuse its discretion in terminating mother's reunification services and setting a section 366.26 hearing for the reasons discussed above.

## DISPOSITION

The petition for extraordinary writ is denied.  This opinion is final forthwith as to this court.