Filed 3/26/21  E.A.M. v. Superior Court CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| E.A.M., | H048672 |
| Petitioner, | (Monterey County Super. Ct. No. 19JD000123) |
| v. | |
| THE SUPERIOR COURT OF MONTEREY COUNTY, | **ORDER MODIFYING OPINION** |
| Respondent; | **NO CHANGE IN JUDGMENT** |
| _____ | |
| MONTEREY COUNTY DEPARTMENT OF SOCIAL SERVICES, | |
| Real Party in Interest. | |

The by the court opinion filed in the above entitled matter on March 26, 2021 included a signature page due to clerical error.  The court orders the opinion modified as follows:  The signature page is ordered stricken.

There is no change in the judgment.


Dated: _____                    _____

                                                        Greenwood, P.J.

Filed 3/26/21  E.A.M. v. Superior Court CA6 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Juvenile court, rule 8.1115(a), prohibits juvenile courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| E.A.M., | H048672 |
| Petitioner, | (Monterey County Super. Ct. No. 19JD000123) |
| v. | |
| THE SUPERIOR COURT OF MONTEREY COUNTY, | |
| Respondent; | |
| MONTEREY COUNTY DEPARTMENT OF SOCIAL SERVICES, | |
| Real Party in Interest. | |

**THE COURT**[1]

PETITION FOR EXTRAORDINARY WRIT seeking a stay of the selection and implementation hearing (Welf. & Inst. Code § 366.26) set for March 30, 2021, in the Superior Court of Monterey County.  Heidi K. Wilden, Judge.

Douglas Y. Tsuchiya for Petitioner E.A.M.

Leslie J. Girard for Real Party in Interest Monterey County Department of Social Services.

-ooOoo-

---

[1] Before Greenwood, P.J., Elia, J. and Danner, J.

# I. INTRODUCTION

E.T.M. was born in October 2019 and tested positive for heroin. The Monterey County Department of Social Services (Department) filed a petition under Welfare and Institutions Code section 300, subdivision (b) on October 15, 2019, alleging that E.T.M. was in danger based on the failure of his mother, N.S., and father, E.A.M. (Father) to protect him.[2]

At the 12-month review hearing, the juvenile court terminated reunification services for both parents pursuant to section 366.21, subdivision (e)(3) and set the matter for a selection and implementation hearing on March 30, 2021. (§ 366.26).

Father petitions this court for an extraordinary writ, arguing that the juvenile court erred by refusing to extend reunification services for six months.[3] We deny the petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND[4]

On October 16, 2019, the juvenile court ordered E.T.M. detained, and set the matter for a jurisdiction/disposition hearing on November 12, 2019. On that date, the court sustained the petition and adjudged E.T.M. a dependent of the court. The court ordered E.T.M. removed, and reunification services be provided to both parents.

At the time of the jurisdiction/disposition hearing, Father was in jail on weapons and drug charges. Father told the social worker that he was open to receiving services. Father signed his initial case plan on November 6, 2019, that required him to follow the recommendations of his Family Mental Health Assessment upon his release from jail, and participate in parenting classes, substance abuse services, counseling, and drug testing.

---

[2] All statutory references are to the Welfare and Institutions Code.
[3] The mother has not filed a writ petition in this case.
[4] We carefully considered the record and include only those facts that are relevant to the issues presented in this petition.

## A. *The Six-Month Status Review*

On May 12, 2020, the juvenile court held the six-month review hearing. The Department recommended that Father continue to receive reunification services. The report stated that Father was released from jail on February 26, 2020. While in jail, Father completed part of a parenting packet that the Department had sent him. The Department referred Father to a parenting course when he was released from jail, but the program was put on hold due to the stay-at-home orders arising from the COVID-19 pandemic.[5]

The Department further reported Father entered a residential drug treatment program when he was released from jail on February 26, 2020, and completed the program on March 27, 2020. Father actively participated in the program and attended all the required group sessions and classes. Father tested negative for drugs on February 26, 2020, March 4, 2020, and March 26, 2020; however, drug testing was put on hold temporarily due to the stay-at-home order.

The Department noted Father completed the required Family Mental Health Assessment, which indicated that he had been exposed to domestic violence and parental substance abuse while he was a child. Father acknowledged in the assessment that he had long-term struggles with drug addiction. The recommendation was for Father to participate in individual therapy.

After he was released from jail, Father participated in three in-person supervised visits with E.T.M. Visits were eventually moved from in-person to virtual due to the stay at home orders. Father consistently participated in the virtual visits.

The Department concluded that there remained a substantial risk of detriment to the health and safety of E.T.M. if he were to be returned to Father, because Father needed to continue participating in his reunification services. Specifically, Father needed to

---

[5] Executive Department State of California Executive Order N-33-20 <https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf> [March 26, 2021], archived at <https://perma.cc/3VL6-Z77T>.

continue with the substance abuse programs, parenting classes, individual therapy, and demonstrate his ability to meet E.T.M.'s needs.

At the conclusion of the uncontested hearing, the juvenile court adopted the findings and recommendation in the report, continued reunification services for the parents, and set a 12-month review hearing.

### B. The 12-Month Status Review Report

The Department recommended termination of reunification services for Father in its November 2, 2020 12-month status review report. At the time, Father was unemployed and had not stayed in contact with the Department. Father was not participating in his case plan. He did not complete the parenting classes, and did not participate in the Parents as Teachers program. The Department had provided Father a link for an online parenting class and had sent him a parenting workbook; however, Father did not enroll in the class and he failed to complete the workbook. The Department had referred Father to a parenting program called "Papas" on May 27, 2020. By October 9, 2020, when Father eventually contacted the program, he was informed that it was no longer available because of lack of funding. Father was placed on a wait list in case the program was restarted in the future.

Father had two relapses during the reporting period. The first was in July 2020 when he used drugs with friends. The second relapse was on August 26, 2020, when he ingested three packets of suboxone and was hospitalized. Father told his social worker that he almost died, but claimed it was because of asthma, not an overdose.

Father failed to drug test in July 2020 and October 2020. Father participated in therapy sporadically. He did attend most of the scheduled meetings with the Department. In November 2020, Father was participating in one-hour supervised visits with E.T.M.

Given Father's lack of progress after 12 months of reunifications services, the Department concluded that there was not a substantial probability that the child could be returned home by the 18-month period. The Department recommended that Father's reunification services be terminated, and the matter be set for a selection and implementation hearing. (§ 366.26.)

### C. *Contested 12-Month Review Hearing*

On December 7, 2020, the court held a contested 12-month review hearing. Father testified that he had been incarcerated and was released from jail on February 26, 2020. While he was in jail, Father completed one of the parenting workbooks that the Department had sent him. When he was released, Father entered an in-patient drug treatment program that lasted through March 27, 2020.

At the time of the hearing, Father was participating in an outpatient drug treatment program three times a week for three hours at a time. Father attended 46 12-step meetings from September 16, 2020, to November 15, 2020, but had not attended any meetings since that time and did not have a sponsor.

Father testified that his July 2020 relapse was caused by drinking and being around friends. Father stated that he refused to take the October 2020 drug test because he was worried his hair follicle test would be positive because of the July 2020 relapse. Regarding the August relapse, Father testified he overdosed on three doses of suboxone and ended up in the hospital.

Father testified that when he uses controlled substances it affects his ability to parent. Father said he learned tools from his parenting class to prepare for court and to participate in parent meetings. Father testified that he could not participate in the Papas parenting program because it was only available to fathers who were younger. Father testified that he did not participate in the Parents as Teachers program because he did not know what it was.

Father testified that he requested more visits with E.T.M. from the Department but was told that he could not have increased visits because of COVID-19.

### D. *Court's Decision Terminating Reunification Services*

When the hearing concluded, the juvenile court considered Father's testimony and admitted the Department's report into evidence. The juvenile court found that although Father was making some efforts to change his life, he had not made significant progress in his case plan. The court stated: ". . . I did not hear sufficient evidence that [the parents] have been able to complete the objectives of the treatment plan that would

enable the Court to take this extreme, really, action for a six-month case, where the Court is aware that the legislature was very clear that we want to make sure that children are moving—at this age are moving towards permanency while the parents are getting the service. That there would be a substantial probability that the child could be returned by the 18-month period. Here, that would be April. And we're now in December."

The court adopted the findings and orders recommended by the Department. These included a finding that the Department provided reasonable services that were designed to help the parents overcome the problems that led to E.T.M.'s removal and that there was not a substantial probability that E.T.M. would be returned to the physical custody of his parents at or before the expiration of 18 months from the date of E.T.M.'s removal. The court terminated reunification services for the parents, and set the matter for a selection and implementation hearing (§ 366.26) for March 30, 2021.

Father filed a petition for extraordinary writ arguing that the juvenile court erred when it refused to extend his reunification services for six months.

### III. DISCUSSION

Father argues the juvenile court erred in setting the selection and implementation hearing (§ 366.26), because he should have been given additional reunification services. He asserts that because he was incarcerated for part of the reunification period, he should receive additional services, the services he was provided were not reasonable, and there was no finding that E.T.M. was adoptable.

#### A. Standard of Review

Section 361.5, subdivision (a) provides in pertinent part: "For a child who, on the date of initial removal from the physical custody of the child's parent . . ., was under three years of age, court-ordered services shall be provided for a period of six months . . . but no longer than 12 months from the date the child entered foster care. [¶] . . . [¶]. [C]ourt-ordered services may be extended . . . not to exceed 18 months after the date the child was originally removed from physical custody of the child's parent . . . . The court shall extend the time period only if it finds that there is a substantial probability that the

6

child will be returned to the physical custody of the child's parent . . . within the extended time period or that reasonable services have not been provided to the parent."

"At the 12-month review hearing, the court may continue reunification services for another six months only if it believes there is a substantial probability the parent will reunify within that time.  (§ 361.5, subd. (a).)  On the other hand, if the court finds there is no substantial probability of return within 18 months of the original removal order, the court must terminate reunification efforts and set the matter for a selection and implementation hearing under section 366.26."  (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 596.)

"We review the juvenile court's findings for substantial evidence, and the juvenile court's decision-making process based on those findings for abuse of discretion. [Citation.]"  (*San Joaquin Human Services Agency v. Superior Court* (2014) 227 Cal.App.4th 215, 223; see also *In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75 [substantial evidence review applies even when juvenile court's standard of proof is clear and convincing evidence].)

We consider the record in the light most favorable to the court's findings, and we draw all reasonable inferences from the evidence to support the disposition.  (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)  "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."  (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)

### B.  Reunification Services

" 'Family preservation, with the attendant reunification plan and reunification services, is the first priority when child dependency proceedings are commenced. [Citation.]  Reunification services implement "the law's strong preference for maintaining the family relationships if at all possible." [Citation.]'  (*In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1787.)  Reunification services are typically understood as a benefit provided to parents, because services enable them to demonstrate parental fitness

7

and so regain custody of their dependent children.  [Citation.]"  (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1228.)

Reunification services for children under the age of three on the date of initial removal are presumptively limited to six months from when the child entered foster care. (§ 361.5, subd. (a)(1)(B); *M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 175-176 (*M.V.*).)  This is because the " ' "unique developmental needs of infants and toddlers" ' [citation] justifies a greater emphasis on establishing permanency and stability earlier in the dependency process ' "in cases with a poor prognosis for family reunification." ' [Citation.]"  (*M.V.*, *supra*, at p. 175.)

Whether the reunification services offered were reasonable and suitable is judged according to the circumstances of the particular case.  (*Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1501.)  "The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances."  (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.) A parent's failure "to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental."  (*M.V.*, *supra*, 167 Cal.App.4th at p. 175.)

The record shows that reasonable reunification services were provided in this case. While Father was in custody at the beginning of the reunification period, the Department sent him parenting and sobriety workbooks to complete.  After Father's release from jail in February 2020, and the completion of his 30-day drug treatment program that was part of his sentence, the Department immediately contacted Father to provide additional services.  At that time, the Department scheduled in-person visitation with E.T.M., provided referrals for the Papas and Parents as Teachers parenting programs, and referred Father for mental health treatment.  When the stay-at-home orders were issued due to the COVID-19 pandemic, the Department arranged for Father to have virtual visits with E.T.M.  In addition, the Department maintained consistent contact with Father throughout the reunification period.

Contrary to Father's argument, the fact that he was in physical pain from a recent work injury and was unemployed does not demonstrate that the services were unreasonable in this case. Father asserts he was not offered services to address his stress and anxiety resulting from his physical condition. However, Father was referred for mental health treatment and only sporadically participated in therapy. Father's failure to use the services provided does not make the services unreasonable.

In addition, the fact that Father was in custody for part of the reunification period does not make the services that were offered unreasonable. The Department provided Father parenting and sobriety workbooks for the five months that he was in custody and in drug treatment. When he was out of custody, the Department provided Father services to help him maintain sobriety, improve his parenting skills, and address his mental health issues for eight months during the reunification period.

While Father participated in part of his plan, he did not make substantive progress in improving his parenting skills. Father completed some of his parenting workbooks while he was in custody and consistently attended in-person and virtual visits with E.T.M once he was released. However, Father did not complete the additional parenting workbooks he was sent during the stay-at-home orders, he did not attend the Parents as Teachers program, and he waited five months after the referral to Papas to contact the program, at which time the program was no longer being offered.

Regarding the services to help Father maintain sobriety and improve his mental health, Father participated in 46 12-step meetings; however, Father did not have a sponsor and he relapsed two times during the reunification period, once in July 2020 and again in August 2020. The second relapse was a near fatal overdose that required hospitalization. Father refused to participate in his required drug tests following his relapses and Father only sporadically participated in mental health services.

Finally, we are not persuaded by Father's argument that he has the ability to properly care for E.T.M. because he has a relationship with his three other children. Two of the children live with their mothers. One child lives with Father's parents because they are her legal guardians. While Father also lives with his parents, he is not

responsible for his child's care, nor does he provide care for his other two children. The fact that Father has a relationship with his three other children does not demonstrate that he has the ability to safely care for E.T.M.

In conclusion, based on the Department's report and Father's testimony at the 12-month review hearing, the juvenile court properly found that the Department provided reasonable services and that Father had "failed to participate regularly and make substantive progress in a court-ordered treatment plan . . . ." (§ 366.21, subd. (e)(3).)

The juvenile court did not abuse its discretion in terminating reunification services and setting the matter for a section 366.26 hearing after the 12-month review hearing. (See § 366.21, subd. (e)(3).)[6]

## IV.   DISPOSITION

The petition for an extraordinary writ is denied. Our decision is immediately final as to this court. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2).)

---

[6] We do not address Father's argument that the juvenile court erred because there was no showing that E.T.M. was adoptable. A finding of adoptability is related to termination of parental rights (§ 366.26, subd. (c)(1)) and is not a requirement to terminate reunification services and set the selection and implementation hearing. (§ 366.21, subd. (e)(3).)

10

_____
Greenwood, P.J.


WE CONCUR:




_____
  Elia, J.











_____
  Danner, J.





E.A.M. v. Superior Court
No. H048672