Filed 2/3/22  Thomas B. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THOMAS B., Petitioner, v. THE SUPERIOR COURT OF MADERA COUNTY, Respondent; MADERA COUNTY DEPARTMENT OF SOCIAL SERVICES, Real Party in Interest. | F083539 (Super. Ct. No. MJP018577) **OPINION** |

-ooOoo-

### THE COURT*

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Thomas L. Bender, Judge.

Thomas B., in pro. per., for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

-ooOoo-

---

\* Before Hill, P. J., Levy, J. and Peña, J.

Thomas B. (father), in propria persona, seeks an extraordinary writ from the juvenile court's orders terminating reunification services and setting a March 3, 2022 Welfare and Institutions Code section 366.26 hearing[1] as to his now two-year-old daughter, S.B. He contends the Madera County Department of Social Services (department) failed to provide him reasonable reunification services. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

On September 18, 2020, the department received a referral concerning then eight-month-old S.B. Father and S.B.'s mother, L.A. (mother),[2] had recently moved to Madera County from Oklahoma. They were homeless and staying with father's sister in a known drug house. The home was unsafe for S.B. and the parents were fighting.

Father denied knowing his sister was a drug user or that there was drug activity in the home. The home had a broken refrigerator, which contained cockroach droppings but no food. A smaller refrigerator on the counter contained salsa, butter, and popsicles. There was a hole in the ceiling and several paint cans and tools around the house within S.B.'s reach.

Father said he took mother to Denver, Colorado to deliver S.B. because of mother's child welfare history in Madera County. In June 2018, S.B.'s then one-month-old twin half brothers were removed from mother because of her drug use and domestic violence. She was provided reunification services but failed to comply and her parental rights were terminated. The children were awaiting finalization of their adoption. S.B. was father's only child and he did not want the department involved.

---

[1]    Unless otherwise indicated, statutory references are to the Welfare and Institutions Code.

[2]    Mother did not file an extraordinary writ petition.

2.

The social worker made a safety plan which required father to get a hotel room for the night and stay with a friend afterward. The friend signed the safety plan. However, when the social worker went to the friend's home several days later to follow up, the friend stated father was not living there and claimed not to know anything about the safety plan. The social worker prepared an order for S.B.'s detention, which the juvenile court signed.

The following day, the department received a report that father was pulled over with S.B. in his car. He was arrested for having 21 grams of methamphetamine in his possession and for previous warrants. A social worker took custody of S.B. and placed her in foster care.

On September 23, 2020, the department scheduled a meeting with the parents who attended but were hostile and refused to speak without an attorney, sign anything or participate in services. They wanted S.B. placed with father's former foster mother. They did not understand why S.B. was removed from them and said they were going to sue the department. They were angry and left the meeting abruptly.

The following day, the department filed a dependency petition on S.B.'s behalf, alleging she came within the juvenile court's jurisdiction under section 300, subdivision (b)(1) (failure to protect) because of her parents' methamphetamine use and subdivision (j) (abuse of sibling) because mother neglected S.B.'s half siblings by using drugs and engaging in domestic violence, and there was a substantial risk S.B. would be similarly neglected or abused.

The juvenile court ordered S.B. detained, offered the parents parenting classes, domestic violence, substance abuse and mental health assessments and recommended treatment, random drug testing and reasonable supervised visits. The court set the jurisdictional hearing for October 29, 2020.

On September 28, 2020, father was approached by a police officer outside of a liquor store with a marijuana cigar he appeared ready to smoke. In addition to the cigar,

3.

father had a large grocery bag which contained 198.8 grams of marijuana, more than seven times the legal limit. He also had a small clear bag with 5.3 grams of methamphetamine and a loaded firearm. Father admitted to the officer that he was addicted to methamphetamine and had a drug problem. He was arrested and booked into county jail.

On October 29, 2020, father's attorney informed the juvenile court there was an out-of-state restraining order that prohibited father from having contact with mother and S.B. The department had obtained a copy of a five-year restraining order issued by a court in Oklahoma in June 2020, protecting mother and S.B. from father.[3] Father's attorney requested supervised visitation. The court stated it would address visitation at the next hearing, which it continued until January 5, 2021.

On January 5, 2021, the parents' attorneys informed the juvenile court they had attempted contact with the parents but were unsuccessful. The juvenile court adjudged S.B. a dependent child as alleged and set the dispositional hearing for January 19, 2021.

Meanwhile, father was arrested on January 6, 2021, for kidnapping (Pen. Code, § 207, subd. (a)), rape of a spouse (Pen. Code, former § 262, subd. (a)), corporal injury (Pen. Code, § 273.5, subd. (a)), and violating a protective order (Pen. Code, § 273.6) after mother reported that father forced her into his car and over three days assaulted her and forced her to engage in sexual acts.

In its dispositional report, the department recommended the juvenile court provide father reunification services but deny them to mother because of her untreated drug abuse and failure to reunify with S.B.'s half siblings. (§ 361.5, subd. (b)(10) & (11).) Mother refused referrals for services and had not provided the department any information that

---

[3]     According to the minute order from the October 29, 2020 hearing, father's attorney represented that the restraining order was issued in Arizona. However, aside from this one instance, the only restraining order mentioned in the record is the one from Oklahoma. We believe the reference to Arizona is a mistake.

she was participating in services or no longer using methamphetamine. Father had not been cooperative with the department and had not participated in a drug test. In addition to his recent assault charges, father had a history of assaulting mother in Oklahoma. In March 2020, he was arrested for domestic assault and battery by strangulation, and domestic assault and battery in the presence of a minor. Mother told the police officer father choked her and threatened to kill her. Mother sustained facial bruising, a cut on the bridge of her nose, bruising on the inside of both forearms and scratches on her back.

The dispositional hearing, originally set for January 19, 2021, was continued and conducted as a contested hearing on March 2, 2021. Father appeared in custody and informed the juvenile court he was taking classes in jail and expected to be released on March 9, 2021. The juvenile court ordered father to complete programs in parenting, domestic violence and outpatient substance abuse treatment, and participate in random drug testing. The court ordered county counsel and father's attorney to contact the court in Oklahoma regarding the restraining order and set a hearing on March 16, 2021, to review the status of the restraining order and for September 2, 2021, as a six-month review of services.

On March 16, 2021, the juvenile court ordered father to provide his attorney certificates of completion for the classes he attended and granted the department discretion to arrange supervised visits for father.

In its report for the six-month review hearing, the department recommended the juvenile court terminate father's reunification services and set a section 366.26 hearing. He regularly visited S.B. but had not completed any of his court-ordered services and was not cooperative with the department. He told his probation officer he did not " 'want anything to do with CPS and [would] do it all himself.' " There were maternal relatives in Oklahoma who were interested in providing S.B. a permanent home and had been approved for placement.

The department attached to its report father's certificates of completion for various courses completed from January through March 2021 while he was incarcerated: "Handling Depression," "Parenting While Incarcerated," "Applying for Health Insurance," "Seeking Substance Abuse Treatment," "Stressful Life Events," "A Guide Through the 12 Steps of Recovery," "Anger Management," "Dealing with Anger," "ART-Aggression Replacement Therapy," "Visitation 2.0 Survey," and "Houses of Healing-A Prisoner's Guide to Inner Power and Freedom." The department also attached father's nonresponsive answers to questions regarding domestic violence. As an example, to the question "In what ways is domestic violence a quiet, lonely abuse?" father typed in "Bjbuvuu." Asked what all abusers had in common, father answered "Ghgh."

On May 31, 2021, father was arrested for kidnapping (Pen. Code, § 207, subd. (a)), threatening a crime with the intent to terrorize (Pen. Code, § 422, subd. (a)), battery (Pen. Code, § 243, subd. (e)(1)), and violating probation after he grabbed mother by the hair, placed her in a choke hold and dragged her into the road.

The six-month review hearing was continued and set as a contested hearing on November 1, 2021. On September 9, father's probation officer reported that father admitted to methamphetamine use on July 27 and August 18, 2021. On October 1, 2021, he was arrested for forging or altering a vehicle registration (Veh. Code, § 4463, subd. (a)(1)), having a warrant out of Oklahoma, and unlawful display of evidence of a registration. (Veh. Code, § 4462.5.)

The department submitted its case on its reports at the contested six-month review hearing on November 1, 2021. Father testified he could not recall if anyone from the department presented him with a written service plan. He was in jail from September 22 until March 9, 2021. During that time the department did not contact him regarding services. He did not receive visitation while he was in jail and did not know why. He completed numerous classes while in jail but was never told they would satisfy his

6.

service plan requirements. He completed two anger management classes and learned he was responsible for his anger. In aggression replacement therapy, he learned to substitute constructive behavior like reading a book or taking a walk for aggressive behavior. He took a parenting class in jail and learned that each child needed different parenting. He signed up for a mental health evaluation while in jail and was still waiting for one to be scheduled. He did not complete a substance abuse evaluation and the department did not offer him domestic violence classes.

When father got out of jail, he contacted the department right away. He was told he needed to drug test and take anger management classes. He did not understand what the department told him since he had already completed anger management classes while in custody. He offered to participate in a substance abuse program and was referred to probation for assistance. He attempted to get into a program but could not due to COVID-19 restrictions. His probation officer told him to drug test for the department. However, when he went to test, he learned he needed an identification card, which he did not have. He made an appointment to get an identification card but was taken into custody soon after and unable to keep the appointment. The department also did not give him sufficient advance notice to allow him to drug test. They notified him by text message the morning of the day he was required to test, but he worked and could not get to the testing facility before it closed at 3:00 p.m. He never tested for the department.

On cross-examination, father disagreed that the social worker contacted him 16 times to discuss his services. When asked about his nonresponsive answers to his online classes, father said his answers were not important. What was important was whether his actions demonstrated he learned from the material. He did not know much about violence because he had never really been a violent person. Father did not know when he was being released from custody but knew that he had a warrant for his arrest in Oklahoma. He knew he would be released in Oklahoma because mother was "nowhere

7.

to be found." Following father's testimony, the juvenile court heard argument and continued the hearing to November 15, 2021, for its ruling.

The juvenile court found it could not return S.B. to father's custody because he was incarcerated with no known release date and was pending extradition in a criminal matter. The department provided him reasonable reunification services and he had not completed them. The court found there was not a likelihood that father could complete services in a timely manner and ordered them terminated. The court set a section 366.26 hearing.

## DISCUSSION

Father contends the department did not provide him reasonable reunification services because it did not provide him referrals for services it required him to complete, did not tell him the ones he completed in jail would not suffice, and did not tell him he had to drug test until the day he was required to test, which was impossible due to the constraints of his employment. The record does not support father's claims.

### *Reasonableness of Services: Relevant Legal Principles and Standard of Review*

California's dependency system is designed "to protect children from harm and to preserve families when safe for the child." (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1424.) During the reunification period of a dependency case, the primary focus is on preserving the family by addressing the issues that led to dependency jurisdiction. (*Rita L. v. Superior Court* (2005) 128 Cal.App.4th 495, 507.) That means until reunification services have been terminated, "family reunification is the goal and the parent is entitled to every presumption in favor of returning the child to parental custody." (*Tracy J.*, at p. 1424.) Once reunification services are terminated, however, the focus shifts to finding the child a safe and permanent home. (*Ibid.*)

"When a child is removed from a parent's custody, the juvenile court ordinarily must order child welfare services for the minor and the parent for the purpose of facilitating reunification of the family." (*Tonya M. v. Superior Court* (2007) 42 Cal.4th

836, 843.) The duration of services depends on the age of the child when initially removed. (§ 361.5, subd. (a)(1).) Court-ordered services must be provided for six months from the dispositional hearing to the parents of a child who was under three years of age when initially removed. (§ 361.5, subd. (a)(1)(B).) The court must advise the parent that reunification services may be terminated after six months if the parent fails to participate regularly in any court-ordered treatment programs or to cooperate or avail him or herself of services provided. (§ 361.5, subd. (a)(3)(C).)

The child's status, and the question of whether services should be extended for an additional period, must be reconsidered no less frequently than every six months. (§ 366, subd. (a)(1); *Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1009.)

At each review hearing, "there is a statutory presumption that the child will be returned to parental custody." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 308.) A court, therefore, must return the child to parental custody at the six-month review hearing unless it finds by a preponderance of the evidence that doing so would "create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.21, subd. (e)(1).) A parent's failure to participate regularly and make substantive progress in court-ordered treatment programs constitutes prima facie evidence that return would be detrimental. (§ 366.21, subd. (e)(1).)

If the child is not returned to parental custody, the juvenile court is required to determine whether "reasonable services that were designed to aid the parent … in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent." (§§ 366.21, subds. (e)(8) & (f)(1)(A), 366.22, subd. (a)(1).) "If … the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court may schedule a [section 366.26 hearing]." (§ 366.21, subd. (e)(3).) The court, however, is not compelled to terminate reunification services and set a section 366.26 hearing if it makes the requisite findings. It simply has the

9.

discretion to do so.  (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 176.)  "If, however, the court finds there is a substantial probability that the child … may be returned to his or her parent or legal guardian within six months or that reasonable services have not been provided, the court shall continue the case to the 12-month permanency [review] hearing."  (§ 366.21, subd. (e)(3).)

"The adequacy of reunification plans and the reasonableness of the [department's] efforts are judged according to the circumstances of each case."  (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164.)  "To support a finding reasonable services were offered or provided, 'the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult .…'  [Citation.]  'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' "  (*Tracy J. v. Superior Court*, *supra*, 202 Cal.App.4th 1415, 1426.)

We review for substantial evidence a court's factual findings supporting an order terminating reunification services at a six-month review hearing.  (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688.)  Under this standard, "we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders.  [Citation.]  'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.' "  (*Id*. at pp. 688–689.)  When examining the evidence supporting the trial court's findings, we "bear in mind that clear and convincing evidence was required in the trial court."  (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1239.)

***Substantial Evidence Supports the Juvenile Court's Reasonable Services Finding***

According to the record, father was incarcerated intermittently from September 22, 2020, to March 9, 2021. The department provided him referrals for anger management classes, parenting classes, a mental health assessment and random drug testing at the time of the dispositional hearing when he was in county jail. After his release on March 9, 2021, social workers attempted to engage him in services 16 times from March 15 to August 9, 2021. Those attempts included having him sign referrals and releases of information, providing him information and documents for services, and reviewing the case plan objectives. However, father was not cooperative. He claimed he completed a parenting class while in jail, however, the printout of his answers indicated he gave little thought to his responses and simply gave an answer for the sake of obtaining a certificate of completion. When the social worker pointed out his answers were not responsive, he told her she was not qualified to evaluate his answers. Further, because father refused to sign a release of information, the department was unable to confirm he completed any of the services required. Contrary to his claims, father's failure to complete his court-ordered services was not for lack of referrals or communication from the department.

Father contends the department led him to believe that the classes he completed in jail would satisfy his services plan requirements. Yet he testified at the contested six-month review hearing that no one, not the department nor the juvenile court, ever told him that the classes he completed in jail would suffice. He had from his release in March 2021 until the contested hearing in November 2021 to cooperate with the department and engage in the department-approved services. Instead, father chose to complete classes on his own, refused to engage with social workers, and then faulted the department when his efforts failed. The record simply does not support his assertion the department misled him into believing the classes he completed in jail met its requirements.

Finally, father's claim the department prevented him from drug testing by not giving him sufficient notice is also unfounded. Father was unable to test because the testing facility required proper identification, which he did not have and was unable to obtain. He was unable to obtain identification, he testified, because he was in custody and unable to make his scheduled appointment to get it.

We conclude substantial evidence supports the juvenile court's finding father was provided reasonable reunification services and affirm its orders terminating his reunification services and setting a section 366.26 hearing.

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is final forthwith as to this court pursuant to California Rules of Court, rule 8.490(b)(2)(A).

12.