Filed 9/25/23  A.M. v. Superior Court CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| A.M.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>        Respondent;<br><br>ALAMEDA COUNTY SOCIAL SERVICES AGENCY et al.,<br><br>        Real Parties in Interest. | A168385<br><br>(Alameda County<br>Super. Ct. No. JD03532901) |

A.M., the mother of one-year-old D.M., petitions for a writ of mandate to overturn the juvenile court's order terminating her reunification services after six months and setting this case for a hearing under Welfare and Institutions Code section 366.21 on December 1, 2023.[1]  Her sole argument is the juvenile court committed legal error under section 366.21, subdivision (e)(3), by failing to consider whether there was a substantial probability that her child would be returned to her within another six months before terminating her reunification services.

---

[1] All further statutory references are to the Welfare and Institutions Code.

1

Mother was not prejudiced by any such error, and we will deny her petition.

## BACKGROUND

In September 2022, the Alameda County Social Services Agency ("agency") filed a dependency petition alleging newborn boy D.M. was at risk due to mother's methamphetamine abuse, including daily during her pregnancy, and domestic violence between mother and D.M.'s alleged father. D.M. tested positive for methamphetamines at birth, was taken into protective custody and ordered detained as a one-week old infant. Both parents were homeless, and mother had several outstanding arrest warrants. The infant was placed in the home of his maternal grandfather and maternal great grandmother, where he would remain throughout the proceedings.

In October 2022, a few weeks after proceedings commenced, mother availed herself of a referral from hospital staff and enrolled herself in an outpatient drug treatment program, along with a women's treatment program that included a parenting support group and a domestic violence support group. But then she skipped a number of random drug tests and tested positive multiple times, including on days she had visitation with D.M. She stopped participating in the program altogether after only a month. The agency tried repeatedly to contact her over the next month and a half, but she didn't respond to any messages.

The combined jurisdiction/disposition hearing took place on December 14, 2022. The juvenile court sustained the petition's allegations and adjudged the child a dependent. By that point, mother had been visiting D.M. regularly. But she did not appear for the hearing, and her counsel implied it was due to her continued struggle with substance abuse ("there's

reasons I believe, and I think the Court can assume, that she's not here today").

Reunification services were ordered.

The six-month review hearing, initially calendared for June 7, 2023, took place eight months later, on August 3, 2023.

During those eight months, mother was briefly in and out of four different treatment programs and frequently failed or skipped her random drug tests[2]; declined a referral for yet another other outpatient treatment program that had space for her; and early on, claimed to have enrolled in another outpatient program (located in Pleasanton, California), her participation in which could not be verified because she declined to sign a release.

Mother had been visiting D.M. at the home of her grandmother and father without incident until one night in March 2023. On that night, she showed up at their home with D.M.'s alleged father, demanded to see her baby son, forced her way into the home and violently assaulted her father, punching him in the face several times and causing injury. The alleged father was verbally threatening. Police were called, a 14-year-old relative

---

[2] They included: a residential treatment program that she left after only a day (in January 2023), an alcohol detoxification program she was required to undergo before enrolling in yet another residential drug treatment program (in April 2023), which she attempted three times without success thus preventing her from entering the residential drug treatment program, another residential program that she left after four days (in June 2023) after being disrespectful to staff and testifying positive for methamphetamines; and an outpatient treatment program she participated in sporadically beginning around the end of June 2023, in which she frequently skipped or tested positive in random drug tests and stopped showing up altogether after about a month.

huddled with D.M. behind a locked bedroom door to protect him, and mother was arrested although no charges were pressed. After that, mother's visitation was required to be supervised at a neutral location away from her relatives' home.

Mother briefly enrolled in a domestic violence program (in June 2023). But by the time of the six-month review hearing, she had stopped attending that program and had left her most recent outpatient drug treatment program, and her lawyer had lost touch with her.

Mother did not appear for the six-month review hearing. The juvenile court terminated her reunification services and scheduled a hearing under section 366.26 for December 1, 2023.

Mother then commenced this writ proceeding and simultaneously asked us to stay the section 366.26 hearing.

## DISCUSSION

Section 366.21, subdivision (e)(3) states: "If the child was under three years of age on the date of the initial removal, or is a member of a sibling group described in subparagraph (C) of paragraph (1) of subdivision (a) of Section 361.5, and the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court *may* schedule a hearing pursuant to Section 366.26 within 120 days. *If, however, the court finds there is a substantial probability that the child, who was under three years of age on the date of initial removal* or is a member of a sibling group described in subparagraph (C) of paragraph (1) of subdivision (a) of Section 361.5, *may be returned to their parent or legal guardian within six months* or that reasonable services have not been provided, *the court shall continue the case to the 12-month permanency hearing.*" (§ 366.21, subd. (e), italics added.)

4

This statute requires the court to make two determinations, not one. Further, even when the court makes the first finding—that the parent has failed to participate regularly and make substantive progress in their case plan—the court has no discretion to set a section 366.26 hearing if there is a substantial probability the child "may" (not "will") be returned to the parents in six months. (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 179-180 (*M.V.*) ["the court's discretion becomes limited when there is a substantial probability the child may be returned to the parent, in which case the court *must* continue the case to the 12-month hearing"]; accord, *Fabian L. v. Superior Court* (2013) 214 Cal.App.4th 1018, 1028; *S.T. v. Superior Court* (2009) 177 Cal.App.4th 1009, 1015-1016). "The court is charged with finding a substantial probability the child *may* be returned. Literally, the statute commands the court to determine whether there is a strong likelihood of a *possibility* of return (not simply a strong likelihood the return will in fact occur)." (*M.V.*, at p. 181.)

Here, mother argues that nothing in the record indicates that either the agency or the juvenile court considered this second factor. She contends that all of the reports and comments on the record reflect that the agency and the court were focused solely on the first determination (i.e., her noncompliance with her case plan and lack of progress thereunder) and neglected to also assess whether there was a possibility D.M. might be returned to her custody within six months. We have reviewed the record and agree that the court did not make this explicit finding.

The agency argues it was *mother's* burden to prove a substantial probability of reuniting by the 12-month hearing, not the agency's burden to disprove it. It is unnecessary to address that legal question, which would be relevant only if we were considering the sufficiency of the evidence to support

5

a finding on this issue. Regardless of whose burden it was, the juvenile court did not explicitly consider the issue and we do not understand the agency to contend otherwise.

But, contrary to mother's unsupported assertion that the juvenile court's claimed error "requires immediate reversal," a juvenile court's error in failing to apply the correct legal standard under section 366.21, subdivision (e)(3) is subject to harmless error review. (See *M.V.*, *supra*, 167 Cal.App.4th at p. 183; *S.T. v. Superior Court*, *supra*, 177 Cal.App.4th at p. 1016.)

Here, it is not reasonably probable mother could have obtained a more favorable result had the court at the six-month review hearing explicitly considered whether there was a "strong likelihood of a possibility of return" within another six months (*M.V.*, *supra*, 167 Cal.App.4th at p. 181, italics omitted). We are not unsympathetic toward mother's desire to reunite with her child. But after eight months of reunification services, mother was still struggling with addiction. She had been chronically unable to commit to participating in substance abuse treatment despite numerous attempts and also continued to test positive for methamphetamine. She had failed to complete a domestic violence program and had violently assaulted the child's caregiver. Her visitation, while fairly consistent and largely positive until March 2023, had been interrupted and then curtailed to one hour per week in a supervised setting because of her violence. She had failed to attend court hearings, failed to communicate with her counsel, was homeless and by the time of the contested review hearing *her whereabouts were unknown*. On this record, there was virtually no possibility D.M. could be safely returned to mother in six months. (Compare *In re A.C.* (2008) 169 Cal.App.4th 636, 652-653 [upholding finding of substantial probability child under three may be

6

returned to parental custody by 12-month review hearing where mother had no positive drug tests, had completed parenting and child abuse programs, had nearly completed one-year domestic violence program and had regularly attended unsupervised visitation] with *In re S.H.* (2011) 197 Cal.App.4th 1542, 1556-1557 [mother with history of substance abuse and violence not prejudiced by court's erroneous refusal to consider granting her reunification services when reinstating dependency proceedings to appoint new guardian, given her "poor conduct" and "failure to rehabilitate despite extensive efforts on her behalf by the department"].)

## DISPOSITION

The petition for writ of mandate and accompanying request for a stay of the December 1, 2023 hearing under section 366.26, are denied. Our decision is final as to this court immediately. (Cal. Rule of Court, rule 8.490(b)(2)(A).)

                                                       STEWART, P.J.

We concur.

_____

RICHMAN, J.

_____

MILLER, J.

s

*A.M. v. Superior Court* (A168385)